FRANK BUSSA ET AL. *v.* TOWN OF GLASTONBURY

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE No. 94101

PHILIP R. GOLDBERG ET AL. *v.* TOWN OF GLASTONBURY

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE No. 94102

HOWARD H. HORTON *v.* TOWN OF GLASTONBURY

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE No. 94103

WILLIAM ZOLA ET AL. *v.* TOWN OF GLASTONBURY

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE No. 94104

Memoranda filed June 14 and August 12, 1968

*Robinson, Robinson & Cole,* of Hartford, for the plaintiffs.

*Edward C. Wynne,* town attorney, for the defendant.

COHEN, J.   These actions are appeals from the action of assessors and the board of tax review of the town of Glastonbury based on §§ 12-107a and 12-118 of the General Statutes and on the rule of valuation under § 12-63.   To be resolved in these appeals is the method of fixing the value for assessment purposes of land classified as farmland pursuant to § 12-63.

Section 12-63, as amended by Public Acts 1963, No. 490 § 9, marks a radical change from the method which existed prior to its enactment.   The prior rule of § 12-63, before its amendment in 1963, was that the "present true and actual value of any estate shall be deemed by all assessors and boards of tax review to be the fair market value thereof and not its value at a forced or auction sale."   This rule of valuation was amended in 1963 as follows:   "The

present true and actual value of land classified as farm land pursuant to section 12-107c . . . shall be based upon its current use without regard to neighborhood land use of a more intensive nature . . . . The present true and actual value of all other property shall be deemed by all assessors and boards of tax review to be the fair market value thereof and not its value at a forced or auction sale." See *Burritt Mutual Savings Bank* v. *New Britain,* 146 Conn. 669; *National Folding Box Co.* v. *New Haven,* 146 Conn. 578.

The legislature, in its wisdom, as it has done in the past, in 1963 by Public Act No. 490 § 1 (General Statutes § 12-107a), stated a declaration of policy: "It is hereby declared (a) that it is in the public interest to encourage the preservation of farm land . . . in order to maintain a readily available source of food and farm products close to the metropolitan areas of the state . . . and to provide for the welfare and happiness of the inhabitants of the state, (b) that it is in the public interest to prevent the forced conversion of farm land . . . to more intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with their preservation as such farm land . . . , and (c) that the necessity in the public interest of the enactment of the provisions of . . . [sections 7-131c and 12-107b to 12-107e, inclusive] is a matter of legislative determination." It was the intention of the legislature to grant special privilege to land devoted to agricultural use. This, the legislature has done before. See chapter 205 of the 1911 Public Acts, which exempted from taxation for a period of not more than twenty years land planted with forest trees and which was declared not unconstitutional as creating a special privilege. *Baker* v. *West Hartford,* 89 Conn. 394.

The plaintiffs, bona fide farmers in the town of Glastonbury, own or rent land concerned in these appeals and are engaged in intensified farm pursuits of various forms—dairy, tobacco, vegetable, corn and orchard culture. The use to which these farmers have put their farms comes within the concept for which the legislation was intended. The problem to be resolved here is the method of valuation for purposes of taxation.

Capitalization of rentals paid by farmers for land devoted to farm use has come to be an acceptable method of fixing farm values in other jurisdictions concerned with this type of legislation. See Farmland Assessment Act of 1964, N.J. Laws 1964, c. 48; N.J. Stat. Ann. §§ 54:4-23.1 to 54:4-23.23. The assessors of the town sought the rentals paid in the town for various farmlands and were provided with them by applicants who sought the benefit of Public Act 490.

A plaintiffs' exhibit which was compiled by Glastonbury farmers familiar with farming operations in the town could form a basis for determination of assessment values. One of the outstanding authorities in Connecticut on farm economics, Dr. Irving Fellows, who also assisted the legislative committee in promulgating the legislation (Public Act 490), states that the most accurate method of assessing the use value of farmland is by capitalization of rentals. It has also been recommended by the American Society of Farm Managers and Rural Appraisers and by William G. Murray, professor of agricultural economics at Iowa State College, in his book, Farm Appraisal: Classification and Valuation of Farm Land and Buildings (1940). In the main, a rental agreement establishes a figure which may be assumed to represent the yearly worth of a farm. Whether the rent is a share of the crop or a sum of

money, both parties have agreed on an amount which represents the use value of the farm for an annual period.

A first requirement in this method, of course, is the knowledge of rental terms within an area, taking into consideration the variation above and below the average for farms of different quality. While, generally speaking, rentals for land for various crops are fairly uniform throughout Connecticut, we are concerned here only with the town of Glastonbury, and we must exclude conditions which may cause a lowering or raising of rental prices and which are brought about because of drought, or excessive moisture affecting river lands, or close proximity to urban areas where sales of land may affect rental values. Peter Marsele of Bloomfield, Connecticut, an eminently qualified appraiser of twenty-two years' experience who is familiar with farms and farm values and assessments and testified in behalf of the plaintiffs, stated that the best method of arriving at current use value is by capitalization of rentals and that this was the generally accepted practice in appraisal technique.

This principle is one which has been used for many years in both the assessment and appraisal professions, so actually it is not an unusual appraisal practice; it is merely separating the value for use purposes versus fair market value. Marsele testified, "If I assessed agricultural land in Bloomfield at fair market value there would not be a farmer left before the end of the year." Both Fellows and Marsele acted as consultants in the drafting of Public Act 490 and participated in the final drafting of the legislation, which while not perfect is a good start in attempting to arrive at a fair basis for tax evaluation of farmlands. It was generally found that there was a uniformity of rental rates for

various farmland uses throughout the state. Marsele stated that prior to the drafting of Public Act 490 a major number of communities in the state were taxing on a farm use basis and that this bill was being presented merely to make legal what the assessors had been doing in practice for many many years.

It seems, therefore, to the court that the information gathered and exhibited to the court concerning the rentals paid in the Glastonbury area and Hartford County is a fair and reasonable basis and the most practical method of determining the use values of farmland under Public Act 490. Since the assessors are familiar with the land generally in their town, the method of determining use values should be relatively simple and should follow the same pattern in all Connecticut towns. For the purpose of these cases, however, the issues raised shall apply only to them. The form used by the Glastonbury assessors does not follow the same classifications as the assessment form currently in use by the state tax commissioner and furnished to the various towns. This decision, however, will use the land classification therein set forth, i.e., tillable A, B, C, D, E; orchard; untillable; woodland and sprout; and swamp. Use value therefore should be determined by the capitalization of the net rental value for all tillable land.

Contrary to general thinking, land for productive farm use in Connecticut is very limited. Suffice here to say that the plots are small, rocky, hilly, and of the right consistency for but few crops, the last of which remaining in the Connecticut valley is the shade-grown tobacco crop, which we should encourage to continue because it is of such great importance to the Connecticut valley. Generally speaking, the average rentals introduced by Fellows and

Marsele can be classified as the average for farmland for the various crops, taking into consideration proximity, quality of land, number of farms in the area, and nearness to urban centers.

Classification of the crops should follow Fellows' recommendations: shade tobacco and nursery, tillable A; binder tobacco, potatoes, and vegetables, tillable B; corn, grasses, legumes (if land can be plowed), tillable C; pasture, untillable; orchard, orchard; woodland and sprout, woodland and sprout; swamp and waste, swamp and waste.

Taxation of farmlands has continued to go higher and higher in all the towns because of the need for school construction, roads, sewage facilities, more services for those who built large housing projects and industrial developments without any added benefits to the farmer. He has been caught in a squeeze. If farmland ultimately should be converted to these higher uses for development, the legislature may very well consider some period of years under a rollback provision to pick up the extra taxes lost from low assessments, after the sale at high prices for industrial or housing acreage. The purpose of the bill to retard such conversions should not be stalled by refusing to give those who apply under Public Act 490 the benefits which the legislature has decreed.

The court finds that using the comparable sales method of evaluation for assessment purposes is not practical. The difference between market value and farm use value is very wide and could not be used to carry out the purposes of Public Act 490. Were comparable sales used, it would negate the very purpose of the act since very little if any land today (that is woodland) is being converted into farmland because of the high costs involved. And when a farm is sold it is usually for an industrial

park or for housing developments. The comparable sales given by Roulston do not fairly reflect farm use value as the act implies.

Since the best method, the court determines, is the capitalization of rents, the following is the formula which the court is adopting from the data furnished by Fellows, based on his research and his familiarity with the economics of the farm situation as it exists in Connecticut. To obtain the use value per acre, you have to take the average gross rental for the particular crop grown, divided by the 10 percent which is obtained as follows: Interest, 6 percent; taxes, 3 percent; maintenance, 1 percent.

With the continuance of the inflationary spiral, these figures may be obsolete. Farmers for the next crop year may be paying 10 percent for interest on money alone to finance their crop growing. The following suggested average value per acre is adopted as applying to the present cases before the court. Tillable A (shade grown tobacco and nursery land), $500; tillable B (binder tobacco, vegetable crops and potatoes), $250; tillable C (cropland and cropland pasture), $125; orchard, $200; untillable (permanent pasture), $50; woodland and sprout, $25; swamp and waste, $10.

It has been held that if an act serves a proper public service the fact that it incidentally confers a direct benefit upon some individual or individuals does not render it invalid. 3 Willoughby, Constitution of the United States § 1150. The exemption of individuals from the burdens of taxation stands on a ground similar to that of an appropriation of public funds. *Corbin* v. *Baldwin,* 92 Conn. 99. A good illustration of private gain under a law sustained by our Supreme Court as constitutional because it served a limited public service appears in *Baker* v. *West Hartford,* 89 Conn. 394, where the granting

of an exemption from taxation, for a limited period of time, of lands which were planted with forest trees in accordance with certain stated requirements was upheld. Generally speaking, if legislation promotes the public welfare and the general welfare of the community, as is stated in the purposes of this legislation, it is for a public purpose. It is for the legislature to determine whether legislation serves a public purpose or not. *Lyman* v. *Adorno,* 133 Conn. 511, 516.

The court is bound to approach the question of the validity of the enactment of legislation from the standpoint of upholding the legislation as a valid enactment unless there is no reasonable ground upon which it can be sustained. *Roan* v. *Industrial Building Commission,* 150 Conn. 333, 338. The legislative purpose and the history of the enactment are of importance in ascertaining the legislative intent. See Sub. for S.B. 253 (May 28, 1963) ;[1] 10 S. Proc., pt. 7,

[1] On April 3, 1968, it was reported on page 34 of The Hartford Courant, a local paper of long heritage, that President Johnson had this to say about farms and farm people: "When I look at the people who serve here [Department of Agriculture] year in and year out, I pretty well know what kind of product we are going to have, and whether it is down at the home demonstration level, the girls showing us how to bottle our cucumbers, or can our peaches, or whether it is the county agent or the soil conservation man helping us with our terraces, or whether it is the county committee where we go to talk about our allotments, in every one of those places you will find good, honest, dedicated people, whatever church they belong to, whatever party. We haven't done as good a job as we ought to. If we had, the farmers wouldn't be moving out and going to the cities. We have to find some way to help move them back."

Farmers in the Connecticut valley are pretty well disgusted with growing conditions, lack of labor, high cost of materials and fertilizer, and, for other than wrapper tobacco, the low income from sales. Prices are not what they should be. The farmers' day begins in the field at 5 a.m. and frequently lasts past 8 p.m. Farmers must care deeply for their work when you consider these hours plus the care and worry attendant to livestock and weather conditions, which make or break farmers for the year. Tax relief is long in coming and should be realistic to allow farmers to remain on the farms. They are a proud and independent people.

1963 Sess., p. 2335; 10 H.R. Proc., pt. 11, 1963 Sess., p. 4247.

Applying the principles of economic rent as set forth in the present opinion, the court has found the 100 percent valuation of the four farms for assessment purposes under Public Act 490. The assessors, in accordance with the general application of assessments, should apply the percentage to these figures which they normally use in determining the final tax assessment, whether it be 50, 60 or 70 percent. The figures found by the court do not apply to any buildings or land on which said buildings are located. These issues were not raised in the hearing with reference to the land and the buildings located on these farms.

Judgments may enter directing the assessors of the town of Glastonbury to reclassify the land of the plaintiffs as farmland under General Statutes § 12-107c (Public Acts 1963, No. 490 § 3), to fix the valuations of the land in all four cases on the assessment list of October, 1965, in accordance with the above judgments, and to remit to the plaintiffs any overpayments which may have been made, with interest to the date hereof.