**Carroll KING et al., Appellants,**

**v.**

**Felix R. REAL, Jr., et al., Appellees.**

**No. 14898.**

Court of Civil Appeals of Texas,
San Antonio.

March 24, 1971.

Rehearing Denied April 21, 1971.

———◆———

Lavern D. Harris, Kerrville, for appellants.

Darrell G. Lochte, Kerrville, for appellees.

**2**

On Motion for Rehearing

KLINGEMAN, Justice.

The opinion handed down on January 27, 1971, is withdrawn and the following is substituted:

This is an appeal from a judgment declaring void and cancelling the assessment and levies imposed upon appellees' respective lands for the year 1968, and permanently enjoining the Kerrville Independent School District and its tax assessor-collector from collecting or attempting to collect from appellees any tax based upon such assessment and levies.

This case involves a construction of the provisions of Article VIII, Section 1–d, of the Constitution of the State of Texas, adopted as amendment to the Constitution on November 8, 1966, Vernon's Ann.St., sometimes called the "Agricultural Use Amendment." Although such amendment has been the subject of another suit,[1] that suit did not involve the matters here involved, that is, the basis of valuation to be used in determining agricultural use value; and so far as we can ascertain, this case is one of first impression in this regard.

The applicable provisions of such amendment here involved read: "All land owned by natural persons which is designated for agricultural use in accordance with the provisions of this Section shall be assessed for all tax purposes on the consideration of only those factors relative to such agricultural use. 'Agricultural use' means the raising of livestock or growing of crops, fruit, flowers, and other products of the soil under natural conditions as a business venture for profit, which business is the primary occupation and source of income of the owner."

Appellees are four ranchers owning land in Kerr County, Texas, in the Kerrville In-

dependent School District, who filed applications to qualify their lands under the provisions of such amendment for assessment as "agricultural use land." It appears from the minutes of the Board of Equalization that some seventeen ranchers made application for and were accepted as qualified for assessment under the provisions of such Act in the year 1968.

The amendment here involved was in effect for the first time during the 1967 calendar year, and during that year, the Board of Equalization of the Kerrville Independent School District had two classes of agricultural use land, with one class being valued at $45.00 per acre, and the other at $40.00 per acre. It does not appear from the record whether any objections or complaints to such valuations were made to the 1967 valuations. On June 25, 1968, the Board of Equalization for the school district dropped the $45.00 per acre classification, and for the year 1968, set $40.00 per acre as the valuation for all agricultural use land within the school district. On June 26, 1968, appellees brought an action for a temporary restraining order to enjoin the Board of Equalization from setting the uniform value of $40.00 per acre on all agricultural use land within the school district. On July 15, 1968, the trial court entered its order, restraining Board of Equalization from fixing any value on the agricultural qualified lands in said district by averaging, and directing the Board of Equalization to fix the value of agricultural qualified lands as provided by law and under the provisions of Article VIII, Section 1–d of the Texas Constitution.

The school district then engaged the services of E. Charles Lewis, a real estate appraiser, to appraise the respective lands under the provisions of Article VIII, Section 1–d. On July 29, 1968, appellees filed their complaint and affidavit to hold the

---

1. Driscoll Foundation v. Nueces County, 445 S.W.2d 1 [Tex.Civ.App.—Beaumont 1969, 450 S.W.2d 320 (Tex.1969)]. This case involved the question of whether an applicant qualified for valuation under the "Agricultural Use Amendment," and did not involve the method of valuation to be used.

members of the Board of Equalization in contempt of the order of the court entered on July 15, 1968, and on hearing thereof, the trial court entered an order refusing to hold such members of the Board of Equalization in contempt. The Board of Equalization thereafter made its assessment of the lands of the seventeen persons who had applied for valuation of their lands as agricultural use lands, including appellee Aime Real, whose property was assessed at $47.50 per acre; appellee Felix Real, whose property was assessed at $47.32 per acre; appellee George Holekamp, whose property was assessed at $42.85 per acre; and appellee Louis G. Strohacker, whose property was assessed at $30.00 per acre. It appears from the minutes of the Board that of the seventeen persons whose lands qualified for valuation under the agricultural use, the assessed values thereof

ranged from a low of $30.00 per acre to a high of $60.00 per acre.

Trial of the case on the merits was to the court, commencing on December 29, 1969; and on February 11, 1970, the trial court entered its order overruling appellants' pleas in abatement and special exceptions, declaring void and cancelling the school district's assessment of appellees' respective lands based on the agricultural use value thereof placed by the Board of Equalization, and permanently enjoining the school district from collecting school taxes based upon such valuations.

Appellants assert sixteen points of error. Twelve of such points of error attack certain findings of fact and conclusions of law made by the trial court in its judgment,[2] and four urge that the trial

2. Findings of Fact and Conclusions of Law made by the court are as follows: "FINDINGS OF FACT 1.) That the defendant Board of Equalization used current or recent comparable land sales, that is market values, in fixing the 'Agricultural Use Value' of Plaintiffs' lands. 2.) That said Board employed a single value factor in fixing the values of Plaintiffs' respective lands, that is a market value sales price of $900.00 per animal unit of carrying capacity. 3.) That the value of each residence was added to the total per acre value of the land. 4.) That said Board justified its values by using a 2.5% capitalization rate. 5.) That the Plaintiffs produced before the Board of Equalization evidence of 'Agricultural use value' by showing net income, through their economics expert, and comparative product values. 6.) The competent evidence adduced upon trial shows that Plaintiffs' properties have been valued and assessed in excess of the agricultural use value thereof. 7.) That each of the Plaintiffs had listed his land, and filed affidavit showing his qualification for 'Agricultural Value'; and that the Assessor-Collector approved the same. 8.) That there is no evidence the Plaintiffs placed any 'Agricultural use value' on the properties involved; but the Plaintiffs did tender the amount of taxes they claimed to be due, timely. CONCLUSIONS OF LAW 1.) That current or recent comparable sales evidence is incompetent as a matter of law to fix 'Agricultural Use Value,' and that

'Economic' cash rent or lease price is also incompetent, in that Art. 8, Sec. 1–d contemplates operation of the land by the owner for agricultural purposes as a business for profit, personally, through paid·employees, or by a share-crop tenancy, as a business venture for profit as his principal occupation and income, and as such, is entitled to a reasonable and fair return on his agricultural investment. 2.) The Board of Equalization employed a fundamentally erroneous and unlawful scheme of valuation, contrary to the Constitution of the State of Texas. 3.) Plaintiffs' individual residences are a part of the land to be valued as a part of the 'Agricultural use value.' 4.) The use of a capitalization rate of 2.5% for the purpose of converting income into the value of a capital asset is arbitrary and fundamentally wrong. It is fundamentally wrong also to adopt a capitalization rate based on current market prices of land. 5.) The valuations fixed upon Plaintiffs' respective lands by Defendants are in each instance grossly excessive. 6.) There is no evidence that any value was rendered for Plaintiffs' properties; and this court is without power to fix value. 7.) That the use of the phrase 'as a business for profit' in Art. 8, Sec. 1–d requires that both the income of the Plaintiffs and their expenses, including their own and other labor, costs of preservation and marketing, expenditures to provide nutrients, fertilizers and chemicals which the land does not provide, and the ultimate replacement

court erred in overruling appellants' pleas in abatement and special exceptions. Appellants' basic contention is that the Board of Equalization made a bona fide attempt to assess appellees' properties on a fair, just, equal and uniform basis; that extended and detailed hearings were held in which witnesses for both appellees and the Kerrville Independent School District testified in considerable detail; that the Board of Equalization carefully considered all of the testimony and exercised its independent judgment; that the record is void of proof of any fraud, want of jurisdiction, illegality, or adoption of any arbitrary or fundamentally erroneous plan or scheme of valuation; that the trial court erred in concluding as a matter of law that the valuation fixed upon appellees' respective lands is grossly excessive; and that the trial court erred in concluding as a matter of law that the assessment and levies imposed upon appellees' respective lands for the year 1968 are void. They also assert that the trial court erred in concluding as a matter of law that appellees' individual residences are a part of the land to be valued as a part of the agricultural use value.

Certain well established rules are applicable to our review of this case. Article VIII, Section 1, of the Texas Constitution and the statutes applicable thereunder require that taxation shall be equal and uniform, and that assessed valuation be arrived at on the basis of reasonable cash market value. Whelan v. State, 155 Tex. 14, 282 S.W.2d 378 (1955); State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, 572 (1954); Briscoe Ranches, Inc. v. Eagle Pass Ind. School District, 439 S.W.2d 118 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.); Articles 7174, 7212, Vernon's Annotated Civil Statutes. It is well settled that the assessment of property for tax purposes is a quasi-judicial function of boards of equalization, and that no attack on valuations fixed by such boards can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation. State v. Whittenburg, supra; State of Texas v. Houser, 138 Tex. 28, 156 S.W.2d 968 (1941). A tax assessment cannot be set aside as being null and void merely because a court or jury differs with an equalization board as to valuation. On the contrary, it must be shown either that the board's valuation was arrived at by an arbitrary or unlawful method, or that the valuation fixed was itself unreasonable, fraudulent, or discriminatory. State v. Houser, supra. Moreover, when their official action is attacked, it will be presumed that such boards discharged their duties as public agencies according to law, and acted in good faith. State v. Whittenburg, supra; Zachary v. City of Uvalde, 42 S.W. 2d 417 (Tex.Com.App.1931). The fact that taxing authorities disregarded the true and legal basis of arriving at assessed valuation does not, of itself, entitle a litigating taxpayer to relief. To be entitled to relief, he must further show that the arbitrary or unlawful plan or scheme of arriving at assessed valuations resulted in substantial injury to him. Whelan v. State, supra; State v. Whittenburg, supra.

Appellees assert that the valuations made by the school district's appraiser and those used by the Board of Equalization were made on the basis of actual market value, using recent comparable land sales as the basis therefor; and that this is a funda-

---

of improvements and equipment necessary to an agricultural operation as a business, and governs value. The calculation of income shall include all income from the agricultural operations prevailing in the area, less all of the expense relating to such a business, including ad valorem taxes. 8.) Use of a capitalization rate is a recognized method of converting income or yield into the value of the capital asset; but the rate used must bear a reasonable relationship to the rate at which other capital investments yield income, as well as, the risk involved, the regularity or constancy of the yield, and the effort required in accomplishing the yield. 9.) The assessments and levies imposed upon Plaintiffs' respective lands for the year 1968 are void."

mentally erroneous and unlawful plan or scheme for determining valuation under the Agricultural Use Amendment.

The school district appraiser, E. Charles Lewis, testified in considerable detail as to the method he used in determining the "agricultural use value" of appellees' properties. It appears from the record that Lewis had been in the real estate and appraisal business for approximately twenty-three years; that he had appraised a great number of ranches and farms; that he is a member of various real estate appraisers associations and has been an officer in a number of such associations; that he has taught real estate appraising in various colleges and has prepared a number of pamphlets and books on real estate appraisal; that he has made appraisals for the government, both state and federal, for banks and loan companies, for numerous taxing agencies, and has testified in many courts as a real estate expert.

Mr. Lewis testified that he was familiar with ranch and farm lands in Kerr County and surrounding counties; that in connection with appraisals made by him of appellees' ranches, he went on such ranches and personally inspected them. He further testified that he made a detailed study of sales of comparable ranch and farm lands in Kerr and numerous other counties; that he is familiar with the market value of lands used for agricultural purposes for the year of 1968 in Kerr County and in the surrounding counties and area; that he used various approaches in determining the agricultural use value of the lands involved; that in making his determination and in arriving at the value of such properties for agricultural use, he excluded all factors which did not form a part of the agricultural use value of such lands. He testified as to numerous sales of lands in Kerr County, with the sale prices of such lands ranging from $75.00 to $225.00 per acre, but that he did not base his valuation on these sales, as other factors, such as location, availability for subdivisions, etc., entered into the sales values of these tracts; and that in order to determine the agricultural use value of such tracts, he took out all the factors of use other than agricultural use to adjust such sales to agricultural use values of appellees' respective lands.

He also testified that in order to determine agricultural use value of land, he went into counties where the land is used only for agricultural purposes, and where the highest and best use of such land was for agricultural purposes, and testified as to various sales which he found where the land was selling for agricultural use only. He stated that in order to determine the agricultural use value of the lands he appraised, including appellees' lands, he used both a market data or comparative approach, and an income or economic rent approach.[3] He stated that in determining values set by him on appellees' respective lands, he made an adjustment of all sales data that he had obtained in order to determine the value of appellees' tracts for agricultural use only; that in order to determine the true value for agricultural use, it is necessary to make adjustments based upon the productivity of the respective tracts, measured in terms of animal unit carrying capacity. An animal unit is based on a beef animal weighing 1,000 pounds, and the basis of comparing one ranch to another is determined by the number of acres it takes for one particular ranch to support one animal unit. According to Lewis's testimony, for example, if on one ranch it requires twenty acres of land to support one animal unit and on another ranch it requires forty acres of land, based on such productivity, the latter ranch is only one-half as valuable for agricultural

3. Lewis testified that economic rent is the going rent in a given area for a particular property, and that various factors have to be taken into consideration, including animal unit carrying capacity. After a stabilized stream of income is ascertained, it is then capitalized to determine market value. Basically, it is the amount of rent a lessee would pay for use of the land for agricultural purposes only.

use purposes as the former ranch. He further testified that in determining the animal unit carrying capacity of a ranch, variables such as the length of the growing season, rainfall, and accepted safe stocking rates are taken into consideration.

After considering all of such factors, Mr. Lewis testified that the agricultural use value of appellee Felix Real's property, based upon an economic rent approach, was $52.66 per acre, and based on sales of land for agricultural purposes, was $47.36 per acre; that the value of appellee Louis G. Strohacker's property, based on an economic rent basis for agricultural use, was $35.66 per acre, and such value based upon sales for agricultural use was $32.15 per acre; that the value of appellee George Holekamp's property, based on economic rent for agricultural use was $63.33 per acre, and based upon sales for agricultural use, such value would be $56.-25; that the value of Aime Real's property for agricultural use based on an economic rent basis was $55.33 per acre, on the basis of sales for agricultural use, $50.00 per acre.[4] The actual valuations finally made by the Board of Equalization were somewhat lower than the values placed on the properties by Mr. Lewis.

■ The enlistment of expert assistance in arriving at valuation is not to be condemned, and fact that the Board of Equalization, after hearing, approved valuations substantially as fixed by expert will not render them illegal and void. Whelan v. State, supra; 54 Tex.Jur.2d, Taxation, Section 124.

Appellees contend that the proper method to determine the agricultural use value is from the net income per acre per year of the respective properties. In support of such contention, each of the appellees testified as to their net agricultural income over a three-year period. In determining such agricultural income, they testified that they considered all agricultural income, less all the expenses relating to such agricultural operation, including their own and other labor, repairs, supplies, gasoline, electricity, depreciation, etc. Appellee Felix Real testified that his net income for the year 1965 was $.63 per acre, $.38 per acre for 1966, and a loss of $.02 per acre in 1967, with an average of $.32 per acre for the three years involved; that the agricultural use value of his lands, based on such figures using a capitalization factor of 4% was $8.25 per acre. Appellee Louis G. Strohacker testified that his net income was $.67 per acre in 1965, $.65 per acre in 1966, and $.23 per acre in 1967, with an average income for the three years of $.52 per acre, and that the agricultural use value of his lands, using such figures, was

---

4. Lewis testified that in arriving at his valuations he did not consider income from hunting leases but excluded such income. For example, he testified that in his opinion, the economic rent on the Louis Strohacker property would be $1.07 per acre, but that if you included income from hunting leases, such economic rent would be $2.07 per acre, a difference of $1.00 per acre; that the economic rent on the Felix Real property would be $1.58 per acre, but that if you included hunting it would be $2.58; that the economic rent on the George Holekamp property would be $1.90 an acre, but if you included hunting, it would be $2.90; and the economic rent on the Aime Real property would be $1.66, but that if hunting income were included, it would be $2.66 an acre. He also testified that it is a debatable matter whether income received from hunting leases is agricultural or not. Each of the appellees testified as to his opinion as to a valuation of his property for agricultural purposes, and in support of such valuations each of the appellees testified as to his net agricultural income over a three-year period, and the average yearly net income of each of appellees' tracts according to their testimony was less than $1.00 an acre. If the income received from hunting leases is not a part of agricultural income, and if, in fact, the income from hunting leases exceeds the income from agricultural use, it would appear under such circumstances that a question would exist as to whether such tracts would qualify for an agricultural use exemption under the holding in Driscoll Foundation v. Nueces County, supra.

between $8.00 and $9.00 per acre. Appellee George Holekamp testified that his average net income for such three years was $.56 per acre, ranging from a profit of $3.36 to a loss of $1.60, and that the agricultural use value of his land, based on such figures, was $14.00 per acre. Appellee Aime Real testified that his average yearly net income for such period was $.705 (70½ cents), and based on these figures, the agricultural use value would be $17.62.

■ Appellees assert that the method of valuation used by them is the proper method of valuation under the Agricultural Use Amendment, and that any use of market value for determining agricultural use value, even if such market value is restricted to its agricultural use only, is fundamentally wrong and erroneous. We find no such restrictions under the provisions of the Agricultural Use Amendment. We do not think that the adoption of the Agricultural Use Amendment completely changes accepted methods of valuation of property.[5] The Agricultural Use Amendment does no more than require that agricultural use valuation be based on the assumption that the land can be used only for agricultural purposes. Stated differently, in valuing agricultural land for tax purposes, it must be assumed that agricultural use represents the highest and best use to which the land can be put. The possibility that the land can reasonably be put to a higher use which would increase its value must be ignored.

It appears from the record that the Board heard considerable testimony as to the value of appellees' respective properties for agricultural use; that different witnesses used different approaches or methods in arriving at their agricultural use valuations; and that the valuations testified to by such witnesses varied in some respects, but that the valuations finally fixed by the Board fell within the range of such testimony.

The method of valuation suggested by appellees makes no differentiation between the fact that one operator may be an efficient operator, and the other may not; nor does it consider speculative matters such as weather conditions or other factors, varying from year to year. Such method ignores that it is the land that is to be valued for agricultural use, and not the particular operator, or the particular operator's business.

Although appellees assert and the trial court found that the Board of Equalization used comparable land sales or market values in fixing the agricultural use value of plaintiffs' lands, it is clear from the record that the Board of Equalization did not use the actual market value of the lands. Appellees in their pleadings pled that the market value of their respective lands to be: Felix R. Real, Jr., $160.00 per acre; Louis G. Strohacker, $140.00 per acre; Aime Real, $120.00 per acre; George Holekamp, $150.00 per acre, and there is considerable evidence of sales of ranch lands in Kerr County in excess of $100.00 per acre. It is interesting to note that while appellees contend that the sale price of comparable land cannot be considered in determining the agricultural use value of lands, they themselves introduced evidence of the sales of lands in Kerr County in the years 1927, 1928, and 1929; and the trial court took judicial notice that such sales

5. Article VIII, Section 1, of the Constitution of the State of Texas provides that all property shall be taxed in proportion to its value, which shall be ascertained as may be provided by law, Article 7174, V.A.C.S., provides that real property shall be valued at its true and full value in money. Article 7212, V.A.C.S., provides that boards of equalization are to hear evidence, touching the market value or true value thereof. Our courts have interpreted these provisions to mean that assessed valuations shall be based on the reasonable cash market value of property. Whelan v. State, supra; State v. Whittenburg, supra; Rowland v. City of Tyler, 5 S.W.2d 756, 760 (Tex.Com.App.1928); Briscoe Ranches, Inc. v. Eagle Pass Ind. School Dist., supra.

were based on the value for agricultural use.

 Separate assessments were made by the school board on appellees' individual residences on the ranches involved, with the valuations ranging from a high of $12,620.00 on one ranch to a low of $2,270.00 on another, which was added to the value of the land. The trial court held this to be wrong and found that appellees' individual residences are a part of the land to be valued as a part of "agricultural use value." We do not agree with the court's holding in this respect. It would appear that under the court's construction, no differentiation would be made whether such residences are of the value of $1,000.00 or $100,000.00 nor any consideration be made of the fact that one rancher might have his residence in town or on another tract, which would be separately taxed by the taxing authorities. Such construction violates our statutory and constitutional provisions that taxes must be equal and uniform.

From a careful examination of the entire record, we are of the opinion that there is a complete absence of proof of fraud, want of jurisdiction, illegality, or adoption of any arbitrary or fundamentally erroneous plan or scheme on the part of the Board of Equalization in making the valuations of appellees' properties, or that the assessments were grossly excessive; and we hold that the assessments and levies here under attack are valid and enforceable.

The judgment of the trial court is reversed and judgment here rendered that: (a) The permanent injunction granted by the trial court enjoining the Kerrville Independent School District and its tax assessor-collector from collection from appellees any tax based on such assessments and levies is dissolved; (b) Appellees take nothing by their suit; (c) All costs are assessed against appellees.