DAVID B. MANN vs. BOARD OF ASSESSORS OF WAREHAM.

Suffolk. April 8, 1982. — August 3, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & LYNCH, JJ.

*Appellate Tax Board,* Jurisdiction. *Taxation,* Real estate tax: agricultural and horticultural land, assessment, value. *Value. Administrative Law,* Substantial evidence.

General Laws c. 58A, § 7, and c. 59, §§ 63, 64, and 65, did not preclude a taxpayer from combining, in a single petition to the Appellate Tax Board, appeals from decisions of a municipal board of assessors dealing with two separate parcels of land. [37-39]

Discussion of the procedures to be followed in determining the value of agricultural and horticultural land for real estate tax purposes pursuant to G. L. c. 61A. [40-42]

Since guidelines established by the Farmland Valuation Advisory Commission under G. L. c. 61A, § 11, are some evidence of the value of agricultural and horticultural land for real estate tax purposes, a finding of value departing from the guidelines should be supported by specific and objectively identifiable reasons. [42]

APPEAL from a decision of the Appellate Tax Board.

*Joan A. Lukey* for the taxpayer.

*Joseph R. Grassia,* Town Counsel, for Board of Assessors of Wareham.

LYNCH, J. This is an appeal from a decision of the Appellate Tax Board (board) dismissing for "want of jurisdiction" three cases consolidated for hearing before the board. In the first case, the taxpayer challenged the refusal of the board of assessors of Wareham (assessors) to classify the taxpayer's cranberry bogs as horticultural land within the meaning of G. L. c. 61A (Agricultural Classification Act) for the fiscal year ending June 30, 1976. In the remaining cases, the taxpayer challenged the assessors' refusal to abate his taxes for fiscal years 1976 and 1977. We reverse and remand the cases for further proceedings before the board.

The taxpayer, David B. Mann, is the owner of several cranberry bogs in Wareham. The bogs are separated by Route 6, and are shown as two separate lots on the assessors' plans. The taxpayer filed two separate applications with the assessors for the classification of the lots as horticultural land under G. L. c. 61A for fiscal year ending June 30, 1976. These applications were denied and the taxpayer then filed a single appeal with the board from the two decisions of the assessors refusing classification.

For fiscal year 1976, the taxpayer also filed with the assessors two separate applications for the abatement of real estate taxes on the lots. The assessors refused to allow the applications and the taxpayer filed a single appeal with the board. For fiscal year 1977, the taxpayer repeated the process by filing two separate applications for abatement with the assessors and a consolidated single appeal with the board upon the assessors' denial of the petitions for abatement.

The answers filed by the assessors in the classification case did not challenge any procedural aspects of the appeal. The assessors filed no answer in the 1976 and 1977 abatement cases. Under the board's rules, this constituted an admission that the only issue which the assessors sought to challenge was that of valuation.[1]

Two days after the consolidated hearing on the three cases began before the board, the assessors filed a "plea in bar" in the fiscal year 1977 case contending that the taxpayer had erroneously joined in one petition two separate decisions of the assessors denying two applications for abatement. On the third day, the assessors filed identical pleas in bar in the other two cases.

The board took all of the pleas in bar under advisement until June, 1978, when they denied the plea in the fiscal year 1977 case. In September, 1980, more than two years after the hearings had concluded, the board dismissed all three appeals for want of jurisdiction.

---

[1] Rule 12 of the Rules of Practice and Procedure of the Appellate Tax Board (1982).

A majority of the board found that the dismissal was required both by the statutes governing such appeals and by "the long and consistent practice of the board in interpreting these statutes." The two dissenting members of the board thought that the decision of the majority was contrary to the requirements of the governing statutes and the opinions of this court. The dissenters said they were unable to find any evidence of the long and consistent practice referred to by the majority. The taxpayer not only urges us to reverse the board's decision but also requests that we remand, with specific instructions as to the weight that must be given to the guidelines established annually by the Farmland Valuation Advisory Commission (FVAC), pursuant to G. L. c. 61A, § 11.

We must decide whether, by taking a single appeal from two decisions of the assessors concerning similar and contiguous parcels, the taxpayer committed a procedural error sufficient to deprive the board of jurisdiction to decide any or all of the three appeals. Since we reverse the board's decision, we also consider the significance of the guidelines established annually by the FVAC under G. L. c. 61A, § 11.

1. *Jurisdiction.* The majority of the board relied on G. L. c. 58A, § 7, and c. 59, §§ 63, 64, and 65, the relevant portions of which are as follows. "Any party taking an appeal to the board from *a decision* or determination . . . of a board of assessors . . . shall file *a petition* with the clerk of the appellate tax board . . . . Where two or more parcels of real estate are included in one decision of a board of assessors, the appellate tax board in its discretion *may* require that each parcel be the subject of *a separate petition*" (emphasis added). G. L. c. 58A, § 7, as amended through St. 1980, c. 572, § 12.

"Assessors shall, within ten days after their *decision on an application* for an abatement, give written notice thereof to the applicant" (emphasis added). G. L. c. 59, § 63, as appearing in St. 1974, c. 288.

"A person aggrieved by the refusal of assessors to abate . . . a tax on a *parcel* of real estate, may, within three months

after receiving the notice of the assessors' decision on an application for abatement ∴ . . . appeal therefrom by filing *a complaint* with the clerk of the county commissioners . . ." (emphasis added). G. L. c. 59, § 64, as amended through St. 1975, c. 677, § 1.

"A person aggrieved as aforesaid with respect to a tax on property in any municipality may, subject to the same conditions provided for an appeal under section sixty-four, appeal to the appellate tax board by filing *a petition* with such board within three months after receiving the notice of the assessors' decision on an application for abatement . . ." (emphasis added). G. L. c. 59, § 65, as amended through St. 1975, c. 677, § 2.

From the italicized language in the statutes quoted above, the board found a clear indication of a legislative intent that only separate appeals from each decision of the assessors would be permitted. We find no such indication.

Since the petitions were filed under the formal procedure, G. L. c. 58A, § 7, applies. The only reference to multiple parcels in that section is found in the sentence which provides: "[W]here two or more parcels of real estate are included in one decision of a board of assessors, the appellate tax board in its discretion may require that each parcel be the subject of a separate petition." The statutory language regarding the informal procedure is slightly different. It provides that: "No statement under the informal procedure shall relate to an assessment on more than one parcel of real estate, except where the board shall specifically permit otherwise." G. L. c. 58A, § 7A, as amended through St. 1980, c. 572, §§ 13, 14. The statutes specifically deal with two situations involving multiple parcels. In both cases, the board is given the discretion to consider petitions involving more than one parcel. Under the informal procedure, the thrust is in favor of separate petitions for each parcel of real estate unless the board specifically provides otherwise. Under the formal procedure, where the assessors combine two or more parcels in one decision, there is to be one petition on appeal unless the board acts to require a severance.

There is no apparent reason and none has been advanced to us to require a different rule when two or more parcels, which were the subject of multiple decisions of a board of assessors, are combined by the taxpayer in a single petition. The assessors' argument to the contrary conflicts with general rules for construing statutes adopted by the Legislature which provide, inter alia, that "[w]ords importing the singular number may extend and be applied to several persons or things, words importing the plural number may include the singular." G. L. c. 4, § 6, Fourth. In addition, this court has held that "ambiguities in taxing statutes are to be resolved in favor of the taxpayer," *Xtra, Inc.* v. *Commissioner of Revenue,* 380 Mass. 277, 281 (1980), and that "[a] tax statute must be strictly construed and 'all doubts are to be resolved in favor of the taxpayer.'" *Massachusetts Ass'n of Tobacco Distribs.* v. *State Tax Comm'n,* 354 Mass. 85, 89 (1968), quoting from *Bolster* v. *Commissioner of Corps. & Taxation,* 319 Mass. 81, 85 (1946).

When the statutory language which the board cited in dismissing the taxpayer's appeals is read in light of these principles, it is clear that the Legislature did not intend to deprive the board of jurisdiction to consider petitions involving multiple parcels of land.

The board's decision cannot be sustained solely on the basis of the majority's assertion that a long practice exists interpreting these sections to require separate appeals. The record here fails to demonstrate that such a practice exists. In fact, the procedural history of this case suggests that if any such practice existed, it was not apparent to the board for the more than two years that the pleas in bar were pending.

We therefore conclude that the board has jurisdiction to hear the taxpayer's petitions. Furthermore, since the board has not promulgated a general rule requiring separate petitions in cases such as this and never requested the taxpayer to file separate petitions prior to the commencement of hearings in his case, the taxpayer's failure to file separate petitions provides no basis for dismissing his appeals.

2. *Determination of value under the Agricultural Classification Act.* Since we remand the case to the board for a decision on the merits, we feel it appropriate to give some guidance on the procedures to be followed in determining value under G. L. c. 61A.

Article 99 of the Amendments to the Massachusetts Constitution, approved and ratified by the people in 1972, permits the assessment at its current use value of land being used for agricultural or horticultural purposes. In response to this constitutional authorization, the Legislature enacted St. 1973, c. 1118, which inserted c. 61A in the General Laws. This Act establishes detailed requirements for the classification of land as agricultural or horticultural (see generally G. L. c. 61A, §§ 1 through 7), and provides that a board of assessors shall disallow an application for such classification if, in its judgment, the land does not qualify. G. L. c. 61A, § 9. In valuing such land, a board of assessors "shall consider only those indicia of value which such land has for agricultural, horticultural or agricultural and horticultural uses. Said board, in establishing the use value of such land, shall be guided by the list of ranges of value published pursuant to section eleven and by its personal knowledge, judgment and experience as to local land values." G. L. c. 61A, § 10. Section 11 of the Act created FVAC, which is charged with determining annually, on a per acre basis, a range of values for each classification of land in agricultural or horticultural use in the Commonwealth.

Several salient features of the Act emerge from these provisions. The land may only be valued for its agricultural or horticultural use; it is mandatory that the assessors take into consideration the ranges of values established by the FVAC; the assessors may also rely upon their knowledge, judgment, and experience concerning local land values.

3. *Use value.* The Act establishes a new and different method of valuing for tax purposes certain land in the Commonwealth. The ordinary standard is, of course, "fair cash value" or the price that an owner who is willing, but not compelled, to sell ought to receive from a buyer willing, but

not compelled, to buy. *Assessors of Quincy* v. *Boston Consol. Gas Co.,* 309 Mass. 60, 63 (1941). The comparable sales approach, a common method of determining fair cash value, would not be appropriate in determining the use value of land subject to c. 61A, without some modification. Comparable sales would be an appropriate indicium of value under the Act only if the sales being considered were limited to transactions where the buyer purchases the property for its use in agriculture or horticulture. Another method of determining "use" value would be the capacity of the land for producing income derived from its agricultural or horticultural use. Both of these methods have been used in other States with similar statutes. See, e.g., *Bussa* v. *Glastonbury,* 28 Conn. Supp. 97 (1968); *Stiles* v. *Brown,* 177 So. 2d 672 (Fla. App. 1965), aff'd, 182 So. 2d 612 (Fla. 1966); *Kentucky Bd. of Tax Appeals* v. *Gess,* 534 S.W.2d 247 (Ky. 1976); *Appeal of Armijo,* 89 N.M. 131 (1976) (preferring the income method over the modified comparable sales approach); *Hot Springs Independent School Dist.* v. *Fall River Landowners Ass'n,*      S.D.      (1978) (262 N.W.2d 33 [S.D. 1978]); *King* v. *Real,* 466 S.W.2d 1 (Tex. Civ. App. 1971).

The modified comparable sales approach described above has been criticised as impractical, *Bussa* v. *Glastonbury, supra* at 103, and as contrary to a constitutional provision requiring assessment of agricultural land according to its value for agricultural use. *Kentucky Bd. of Tax Appeals* v. *Gess, supra* at 249-250. The income approach has also been criticised for not distinguishing between efficient and inefficient operations, or for failing to adjust for variable factors, such as weather conditions. *King* v. *Real, supra* at 7. Neither approach is without problems and we recognize that no particular method of valuation may be entirely satisfactory in every case. See *Foxboro Assocs.* v. *Assessors of Foxborough,* 385 Mass. 679, 691 (1982). Boards of assessors must make their determination of use value using the most appropriate method in the circumstances of each case. In every case, however, the board should consider the guidelines promulgated by the FVAC. The board may also take

into consideration comparable sales for agricultural or horticultural use and income from such use.

4. *Burden of proof.* In an appeal to the Appellate Tax Board from the denial of a tax abatement, the taxpayer bears the burden of proof on the issue of overvaluation. *Foxboro Assocs.* v. *Assessors of Foxborough, supra* at 681. *Schlaiker* v. *Assessors of Great Barrington,* 365 Mass. 243, 245 (1974). The board's decision must, in turn, be supported by substantial evidence. *Foxboro Assocs.* v. *Assessors of Foxborough, supra* at 681. *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466-467 (1981). We have held that evidence proffered by the party bearing the burden of proof may not be disbelieved without an explicit and objectively adequate reason. *New Boston Garden Corp.* v. *Assessors of Boston, supra* at 470. The Act clearly provides that the FVAC guidelines are some evidence of use value. G. L. c. 61A, § 10. In valuing land classified as agricultural or horticultural, a finding of value within the guidelines established by the FVAC would therefore require little additional evidence to meet the substantial evidence test. A determination of value outside the guidelines would require an appreciably stronger showing and would require, at a minimum, an identification of the factors that led to a determination of value outside the guidelines. If the board determines that a departure from the guidelines is warranted, its decision will stand if it is based upon substantial evidence. In such a case, the findings of the board should include specific and objectively identifiable reasons for its determination of value outside the guidelines. See generally *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 469-471 (1981).

The board's decision is reversed and the case is remanded to the Appellate Tax Board for further proceedings consistent with this opinion.

*So ordered.*