Edmond H. Plante *vs.* Town of Grafton & others.[1]

No. 00-P-1138.

Worcester. April 10, 2002. - October 7, 2002.

Present: Lenk, Kass, & Mills, JJ.

*Real Property,* Right of first refusal, Purchase and sale agreement, Agricultural or horticultural use. *Municipal Corporations,* Acquisition of real estate. *Statute,* Construction.

A landowner who, in accordance with G. L. c. 61A, applied for and received classification of a particular parcel of land as agricultural or horticultural, could not, when later seeking to sell the parcel and take it out of agricultural or horticultural use, defeat the option of first refusal conferred on the municipality under G. L. c. 61A, § 14, by requiring the municipality to acquire more than that particular parcel of land on an "all or nothing" basis. [213-214, 217-218]

Where sellers of two parcels of land could not deliver both parcels as called for in a purchase and sale agreement, the buyer, after declining to accept a return of his deposits, was obligated by the purchase and sale agreement to take such title as could be, and in fact was, tendered; by refusing to do so, the buyer placed himself in breach of the agreement, and each seller was entitled to retain its deposit. [218-219]

Civil action commenced in the Superior Court Department on March 26, 1999.

The case was heard by *Martha B. Sosman,* J.

*Nisha Koshy Cocchiarella* for the plaintiff.

*Louis M. Ciavarra* for Robert N. Hennessey & another.

*Thomas P. Lane, Jr.,* for town of Grafton.

Kass, J. Under G. L. c. 61A, § 14, a municipality has a right of first refusal to buy land that is being taken out of agricultural or horticultural use, if the municipality has so classified that land under c. 61A. The question this case presents is whether a city or town may be forced by owners who propose to take two

or more parcels out of agricultural or horticultural use to buy all of those parcels or whether the municipality may choose to acquire fewer than all of the lots the owners propose to remove from agricultural or horticultural use. We decide that, at least on the peculiar facts of this case, owners may not put their parcels to the municipality under § 14 on an all or nothing basis. A judge of the Superior Court, who heard the case without a jury, came to the same conclusion. The case had come before her as a declaratory judgment action.

1. *Facts.* In 1997, Robert N. Hennessey applied to the assessors of Grafton to have 124.25 acres of land he owned on Adams Road (we shall call it "Parcel I") classified under G. L. c. 61A, § 6, as agricultural or horticultural land.[2] Keith Downer, as trustee for the Sun Valley Funding Trust (of which Hennessey was the sole beneficiary), on January 23, 1998, did the same as to 50 acres on Old Westboro Road (we shall call that land "Parcel II"). The assessors approved the classifications requested and Hennessey and Downer became eligible to harvest the concomitant tax benefits that the statute confers. See G. L. c. 61A, §§ 4, 6. See generally *Mann* v. *Assessors of Wareham,* 387 Mass. 35, 40-42 (1982).

Under G. L. c. 61A, § 14, should the owners of land so classified propose to discontinue using it for the classified purpose, they must: (a) if the change of use is to come about by reason of a sale of the land, afford the city or town in which the land is located a 120-day option to buy the land on such terms as are contained in a bona fide purchase offer made to the owner; or (b) if a change of use by the owner, rather than a sale, is involved, afford the city or town a 120-day option to buy the land for its fair market value as determined by impartial appraisal.[3]

On May 1, 1998, Hennessey and Downer entered into a

---

[2]Section 1 of G. L. c. 61A defines, in rough terms, agricultural use as the raising of farm animals such as cattle, poultry, sheep, swine, horses, mules, and goats. Horticultural use, defined in § 2, refers to raising fruits and vegetables, and other crops.

[3]Section 14 of c. 61A is a statute of some detail and length. The material language relevant to this case is: "Land which is valued, assessed and taxed on the basis of its agricultural or horticultural use under an application filed and approved pursuant to this chapter shall not be sold for or converted to

purchase and sale agreement with Edmond H. Plante to sell to him Parcel I and Parcel II; Hennessey to sell the 124.25-acre Parcel I and Downer to sell the 50-acre Parcel II. The two parcels are not contiguous. The agreement provided that Parcel II would be sold first, the closing to occur on July 15, 1998. The purchase price for Parcel II was $1,000,000, to be paid by an initial deposit of $5,000, $295,000 in cash at the closing, and the balance by a purchase money mortgage note of $700,000. The principal on the note was to be paid in installments of $350,000 on December 31, 1998, and June 30, 1999. As to Hennessey's Parcel I, the closing date was December 31, 1999, eighteen months later. The price was $1,500,000, to be paid by an initial deposit of $1,000, and $349,000 in cash at the closing, the balance by a purchase money mortgage note of $1,150,000. The principal on the note was to be paid in $350,000 installments on June 30, 2000, December 31, 2000, and June 30, 2001. A final payment of $100,000 was due on December 31, 2001. There were, thus, separate sellers, separate closing dates, and disparate financial terms.

Section 25.0 of the purchase and sale agreement provided: "The parties agree that[,] subject to the terms and conditions of this agreement, the Buyer is obligated to complete the purchase of both Parcel I and Parcel II and is not able to buy one and not the other."[4] There was also a provision in the agreement, § 17(c), that conditioned the obligations of the buyer on the sellers obtaining from the town a release of its statutory right of first refusal.

The sellers gave to the town the requisite notice that they

---

residential, industrial or commercial use while so valued, assessed and taxed unless the city or town in which such land is located has been notified of intent to sell for or convert to such other use . . . . For a period of one hundred twenty days subsequent to such notification, said city or town shall have, in the case of an intended sale, a first refusal option to meet a bona fide offer to purchase said land, or, in the case of an intended conversion not involving sale, an option to purchase said land at full and fair market value to be determined by impartial appraisal."

[4]As drafted, this appears to be a provision for the benefit of the seller that the seller could waive. See *DeFreitas* v. *Cote*, 342 Mass. 474, 477 (1961); Restatement (Second) of Contracts § 226 comment a, illustration 4 (1981). Cf. *Shapiro* v. *Grinspoon*, 27 Mass. App. Ct. 596, 600 (1989). The parties have presented the case as if the provision in question were a reciprocal obligation and we have considered the case on that basis.

intended to sell their respective properties to a buyer who would use the land to build single family houses, i.e., for other than agricultural or horticultural purposes.[5] In their notice, the sellers informed the town that, "By the terms of his offer, [the buyer] is required to purchase both properties and may not purchase one or the other." After a special town meeting, the town elected to exercise its option under G. L. c. 61A, § 14, as to Parcel I, and waived it as to Parcel II. That waiver, under the provisions of § 14, had the effect of releasing Parcel II from its restricted use.

Plante, the buyer, was unwilling to buy only Parcel II, the 50-acre property. He was insistent that the sellers bring an action against the town to require it to exercise its right of first refusal on an all-or-nothing basis. The sellers declined so to do and sent Plante a check for $6,000, the aggregate of the two deposits he had paid. Plante, through counsel, sent the check back. The sellers gave a formal notice of tender; they would present the deed to Parcel II on April 5, 1999, in accordance with the purchase and sale agreement. This the sellers followed with a formal tender at the Worcester District Registry of Deeds at 10:00 A.M. on the designated date.

Plante did not show up. He had already filed a complaint against the sellers for specific performance, a gambit that succeeded in securing a notice of lis pendens against both properties. Some three weeks later, Plante filed an amended complaint that added the town of Grafton as a defendant and requested a declaratory judgment that "Grafton has failed to exercise its right of first refusal properly pursuant to G. L. c. 61A" and that the sellers were required to make specific performance. In addition to the all-or-nothing right of first refusal issue, the answer of the sellers placed before the court the question whether Plante had committed a breach of the purchase and sale agreement which entitled the sellers to keep his deposit as liquidated damages.

---

[5]There is no dispute that the notice to the town conformed with G. L. c. 61A, § 14, and that the sellers had received a bona fide offer. As to the meaning of the phrase "right of first refusal," see *Roy* v. *George W. Greene, Inc.*, 404 Mass. 67, 69-70 (1989).

2. *Validity of town's exercise of rights under G. L. c. 61A, § 14.* Chapter 61A came into the General Laws in the wake of art. 99 of the Amendments to the Massachusetts Constitution, approved and ratified in 1972. Article 99 permitted assessing at its current use value, rather than highest and best use value, land that was being used for agricultural or horticultural purposes. See *Mann* v. *Assessors of Wareham*, 387 Mass. at 40.

It is probably dispositive that Hennessey and Downer, who owned separate parcels, applied separately to have them classified as horticultural under G. L. c. 61A.[6] In consideration of the tax benefit that such a classification bestows upon the landowner, § 14 confers upon the municipality the right to keep the land from being developed. As to each grant of an application for agricultural or horticultural status, there is a refusal option in favor of the municipality. Ordinarily, a seller may not defeat a right of first refusal by confronting the optionee with terms that include acquisition of land in addition to that covered by the right. Illustrative cases include *Pantry Pride Enterprises, Inc.* v. *Stop & Shop Cos.*, 806 F.2d 1227, 1229 (4th Cir. 1986); *Gyurkey* v. *Babler*, 103 Idaho 663, 667-668 (1982); *Myers* v. *Lovetinsky*, 189 N.W.2d 571, 575 (Iowa 1971); *Staley* v. *Osborne*, 262 Md. 514, 524 (1971); *C & B Wholesale Stationery* v. *S. De Bella Dresses, Inc.*, 43 A.D.2d 579, 580 (N.Y. 1973). The rationale of those cases is that permitting a seller so to do allows the seller, as optionor — as here — a too easy means to defeat the rights of the holder of the option right.

It is an additional consideration that there inheres in art. 99 of the Massachusetts Constitution and the implementing statute, G. L. c. 61A, a public policy to encourage agriculture and horticulture in the Commonwealth and to keep land free of construction not related to agricultural or horticultural purposes. That policy may not be defeated through the contrivance of bundling landowners and lots so as to confront a municipality with the choice of surrendering all its rights to keep land free of construction development or imposing on it more expenditure for land than it can prudently tolerate.

Final reinforcement for our view of the case flows from the

---

[6]There is no suggestion that Hennessey's beneficial interest in the trust property causes the ownership of the two parcels to be other than separate. We do not intimate that there would be any validity to such a suggestion.

repeated emphasis in the purchase and sale agreement on the separateness of the two tracts: they are separately owned; there are different prices and financing terms for each tract; and there are separate closing dates — eighteen months apart. Indeed, as a result of the considerable interval between closings, it is, as a practical matter, quite possible that the transaction on Parcel II would close and the later scheduled closing on Parcel I would not (e.g., because of a title defect or financing difficulties). There is nothing in the purchase and sale agreement that suggests that in such event there would be a reversion of the tract first sold.

We hold that a landowner who, in accordance with G. L. c. 61A, applies for, and receives, classification of a particular parcel of land as agricultural or horticultural, may not defeat the option of first refusal conferred in G. L. c. 61A, § 14, by inserting terms that require the municipality to acquire more than that particular parcel of land.

3. *Plante's obligations under the purchase and sale agreement.* There were in the purchase and sale agreement familiar, that is to say, boilerplate, provisions to deal with the possibility that the sellers might not be able to perform as they had promised. We set forth those provisions in the margin.[7] The sellers notified Plante that they could not deliver both parcels as

---

[7]    "6.0 *Extension to Perfect Title or Make the Premises Conform.* If the Seller shall be unable to give title or to deliver possession of the premises, as herein stipulated, or if at the time of delivery of the deed the premises do not conform with the provisions hereof, the Seller shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the Seller shall give written notice thereof to the Buyer at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty (30) days.

"7.0 *Failure to Perfect Title or Make Premises Conform.* If at the expiration of the extended time the Seller shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then at the Buyer's option, any payments made under this agreement shall be forthwith refunded and all other obligations of all parties hereto shall cease and this agreement

called for in the agreement. Under §§ 7.0 and 8.0 of the agreement, the buyer had a choice of asking for his deposits back or taking such title as the sellers could deliver. It will be recalled that the sellers returned the deposits and the buyer sent them back.

Under § 6.0, the sellers were to "use reasonable efforts to remove any defects in title." Litigating with Grafton about whether it had lawfully exercised its first refusal rights would, under the cases, exceed what might be considered a reasonable effort. See *Fisher* v. *Sneierson*, 330 Mass. 48, 50-51 (1953); *Trabucco* v. *Nelson*, 8 Mass. App. Ct. 641, 645 (1979). Compare *Lafond* v. *Frame*, 327 Mass. 364, 366-367 (1951); *Sachs* v. *Hirshom*, 16 Mass. App. Ct. 704, 705-706 (1983); *Durkin* v. *Ferreira*, 21 Mass. App. Ct. 771, 773-776 (1986). Having made an election by refusing to accept a return of the deposits, the buyer was obligated to take such title as the trust could deliver, and as to which, indeed, the trust tendered delivery. By refusing to do so, the buyer, Plante, placed himself in breach of contract and each seller is entitled to retain its deposit. There is a surface anomaly to declaring Plante, who sought entire performance, in breach of contract. As we have remarked, however, the sellers were not bound to litigate with the town. Plante's choices were not without financial consequences to the sellers. In connection with the complaint that launched this litigation, he had filed (as previously noted) a lis pendens as to both parcels. This, as the trial judge found, prevented the trust from concluding an advantageous sale of Parcel II to a third party.[8]

*Judgment affirmed.*

---

shall be void without recourse to the parties hereto.

"8.0 *Buyer's Election to Accept Title.* The Buyer shall have the election, at either the original or any extended time for performance, to accept such title as the Seller can deliver to the said premises in their then condition and to pay therefor the purchase price without deduction."

[8]In his brief, Plante adverts to a provision of the purchase and sale agreement under which he was to be reimbursed for half his engineering and site investigation costs should the town exercise its option pursuant to G. L. c. 61A. His amended complaint, however, never requested that reimbursement and the trial judge, justifiably, did not mention the subject in her decision.