Marvin L. JONES, Appellant,

v.

HUTCHINSON COUNTY et al., Appellees.

No. 9212.

Court of Civil Appeals of Texas, Amarillo.

April 29, 1981.

Gibson, Ochsner & Adkins, Marvin W. Jones, Amarillo, for appellant.

Perdue, Brandon, Blair, Shiever & Fielder, Larry Brandon, Underwood, Wilson, Sutton, Berry, Stein & Johnson, Amarillo, for appellees.

REYNOLDS, Chief Justice.

Marvin L. Jones appeals from a judgment denying him injunctive relief from, and decreeing his liability for ad valorem taxes under, the method or scheme utilized by Hutchinson County in the evaluation and assessment of his agricultural land. The judgment, being invulnerable to the legal and factual attacks mounted against it, is affirmed.

Jones owns real property situated in Hutchinson County and used for agricultural purposes. It was stipulated that for the tax years 1977 and 1978, Jones met the constitutional conditions to have his land, which he designated for agricultural use, assessed for tax purposes on the consideration of only those factors relative to the agricultural use of land. Tex.Const. Art. VIII, § 1–d. Jones rendered the property at a value of $44,916, translating into a tax of $230.10 per year. The tax assessor-collector for Hutchinson County disagreed with the rendition and certified the dispute to the board of equalization. The board valued the property at $77,230, translating into a tax of $330.63 and $330.64 respectively, for 1977 and 1978.

The litigation underlying this appeal had its genesis in Jones' application to temporarily enjoin the taxing officials of Hutchinson County [1] from taxing his agricultural land under the method or scheme of evaluation and assessment utilized by them. Hutchinson County, acting by its authorized officials, counterclaimed to recover from Jones the amount of the 1977 and 1978 taxes generated by its scheme of taxation.

1. The named officials of Hutchinson County, serving at the time of judgment, are: Lucy Ann Berry, tax assessor-collector; Gene Schneider, county judge; Jack Worsham, Blaine Scott, William Shipley and Murray Jennings, county commissioners. The county judge and the county commissioners constitute the board of equalization.

After a conventional bench trial on the merits, the trial court, formally finding the necessary prerequisites for Jones' liability for the taxes, rendered the judgment from which Jones brings this appeal. By its judgment, the court denied Jones all relief and decreed that Hutchinson County recover from Jones the amount of taxes assessed for the years 1977 and 1978, together with statutory penalty, interest and attorney's fees.

■■■ Initially, Jones complains the court erred in overruling his motions for partial summary judgment. We do not entertain the complaint. If the court overruled the motions, its order doing so is interlocutory and nonappealable.[2] After a party has moved unsuccessfully for summary judgment and subsequently loses in a conventional trial on the merits, the interlocutory order overruling the motion is not reviewable on appeal. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex.1966). Thus, whether the court erred is not a matter for appellate consideration.[3] *Morrow-Thomas, Inc. v. Harris*, 466 S.W.2d 323, 324 (Tex.Civ.App.—Eastland 1971, no writ).

Jones pleaded, as part of his cause for relief with respect to the 1978 taxes, the failure and refusal of the taxing officials of Hutchinson County (hereafter collectively referred to as Hutchinson County unless otherwise noted) to apply the provisions of Texas Revised Civil Statutes Annotated art. 7150k,[4] enacted effective 1 January 1978, but since repealed.[5] The article reads, in part, as follows:

Sec. 2. The value for ad valorem tax purposes of open-space land used to support the raising of livestock or production of farm crops or forest products shall be determined on the basis of the category of the land supporting livestock or producing farm crops or forest products using accepted income capitalization methods applied to average net to land. The value so determined shall never exceed the fair market value of the land as determined by other appraisal methods. . . .[6]

Hutchinson County, indisputedly not honoring the provisions of article 7150k for the tax year 1978, contended that it was unconstitutional.

2. The record brought forward does not contain any order pertaining to the motions for partial summary judgment filed by Jones.

3. Were the complaint subject to attention, we would overrule it. Jones sought to establish by partial summary judgment that, in essence, his property was not assessed for taxation purposes on the consideration of only those factors relative to the agricultural use of the property as required by the constitution. Tex.Const. Art. VIII, § 1–d. He maintains that the deposition testimony of members of the board of equalization carries the judicial admission of that fact, thereby establishing it as a matter of law. However, the statements upon which Jones relies were contradicted by declarations to the contrary in affidavits, three of which were executed by three of the deponents, filed in response to Jones' motions. There is, of course, no basis for giving controlling effect to a deposition over an affidavit and, if conflicting inferences may be drawn from the deposition and from the affidavit of the same party, a fact issue is presented so as to preclude the granting of summary judgment. *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 562–63 (1962).

4. All references to articles designated by Arabic numerals and letters are to the articles of Texas Revised Civil Statutes Annotated.

5. Another statute of similar language was enacted. Tex.Rev.Civ.Stat.Ann. art. 7174A (Vernon Supp.1980–1981). This statute is predicated on a constitutional amendment empowering the legislature to provide for the taxation of open-space land on its productive capacity. Tex.Const. Art. VIII, § 1–d–1 (Vernon Supp. 1980–1981).

6. Article 7150k originated in the legislature as House Bill 22. As originally approved by the House and Senate, H.B. 22 was coupled with, and was to become effective only upon adoption of, a proposed constitutional amendment authorizing the bill's appraisal program of open-space land. However, the bill emerged from conference committee without the language of its dependency upon the constitutional amendment. The companion proposed constitutional amendment was defeated in the House, but H.B. 22, devoid of the constitutional dependency language, was enacted. 1977 Tex. Gen.Laws, ch. 318, Sec. 2, at 847, 848.

The trial court concluded that article 7150k expands Article VIII, Section 1–d of the Constitution of Texas, contravenes Article VIII, Section 1, thereof, and is unconstitutional. Jones assigns this conclusion as error. We perceive no error in the court's conclusion.

 Article VIII, Section 1 of the Constitution of Texas [7] provides that

Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.

Article VIII, Section 1–d permits assessment of certain land at its agricultural use value. In this regard, the article states:

All land owned by natural persons which is designated for agricultural use in accordance with the provisions of this Section shall be assessed for all tax purposes on the consideration of only those factors relative to such agricultural use.

The term "value" as used in Section 1 of the article means market value, *Lively v. Missouri, K. & T. Ry. Co. of Texas*, 102 Tex. 545, 120 S.W. 852, 856 (1909), and the provision requires that assessed valuations be arrived at on the basis of reasonable cash market value. *Whelan v. State*, 155 Tex. 14, 282 S.W.2d 378, 380 (1955). The adoption of Section 1–d of the article, while providing for special assessment of certain agricultural land, did not completely change the accepted methods of valuation of property. It does no more than require that valuation be based on the land's use only for agricultural purposes. *King v. Real*, 466 S.W.2d 1, 7 (Tex.Civ.App.—San Antonio 1971, writ ref'd n. r. e.).

 It is at once obvious that the language of article 7150k calls for a valuation of agricultural land on a basis other than, and in violation of, the market value basis

required by the constitution. Therefore, sans a constitutional basis, article 7150k can have no effect. The Attorney General of Texas has so held. Tex. Att'y Gen.Op. No. H–1098 (1977). The attorney general's opinion, rendered in accordance with constitutional authority, has a highly persuasive value in the courts. *Vick v. Pioneer Oil Co., Western Division*, 569 S.W.2d 631, 633–34 (Tex.Civ.App.—Amarillo 1978, no writ). Accordingly, the trial court did not err in its conclusion.

 By a series of points, Jones attacks the court's findings that: (1) his land was valued and assessed pursuant to Article VIII, Section 1–d; and (2) the value of his land, pursuant to that constitutional provision, (a) was $77,230 for the tax years 1977 and 1978, and (b) was not excessive. Jones submits that the evidence conclusively established that the board of equalization failed to follow the constitutional mandate in valuing and assessing his property, and that all of the findings are against the great weight and preponderance of the evidence. The attacks are merited only if a review of the record reveals there is no evidence tending to support the court's finding of constitutional compliance, *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), and in the light of all the evidence, the findings are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951).

The evidential record is voluminous. There is in it, as Jones emphasizes, deposition testimony by the members of the board of equalization that the board considered Article VIII, Section 1–d, to be illegal and, as a result did not appraise the Jones property based solely on agricultural use. But there also is in the record, as Hutchinson County equally emphasizes, testimony by one or more of the board members that

---

**7.** All references to articles designated by Roman numerals and the sections thereof are to the articles of the Constitution of Texas.

they were nervous or confused at the time they were deposed and, being without legal knowledge, they had difficulty in understanding the difference between constitutional provisions, statutes and bills. One or more of them gave trial testimony that they hired an expert because of their unfamiliarity with the principles of assessing land for agricultural purposes only; they attempted to set values strictly on an agricultural basis; and they fairly accurately assessed the agricultural lands at a fair market value for agricultural use only. Also before the court was testimony that the board members questioned the expert they hired as to his scheduled values of property, and that the schedule the board used in valuing and assessing Jones' property was based on both a comparable sales and a production approach in which sales were discounted to reflect only agricultural use and all other factors were excluded. The final schedule of valuation and assessment of agricultural lands adopted by the board, according to direct testimony, reflected only values for agricultural use.

The market value of Jones' property was adduced through two witnesses: C. W. Whitford produced by Jones, and J. W. McMorries, Sr., called by Hutchinson County. The qualifications of each as an expert land evaluator are not challenged.

Utilizing the income capitalization approach or production approach as the only reliable method to determine agricultural value, Whitford arrived at the market value of $44,916 for the tax years 1977 and 1978. Utilizing both the comparable sales approach and the productivity approach based upon available yield statistics, and excluding all factors except agricultural use, McMorries arrived at the market value of $77,230 for the two tax years.

By selected references to the record, each litigant does point to instances of informational challenges bearing on the accuracy of the opposing expert's valuation. Illustratively, Jones calls attention to McMorries' admission that, for Jones' land, he arbitrari-

ly applied a reduction to an earlier schedule of properties to reach a result politically acceptable to Hutchinson County, and that the income capitalization method used by Whitford would be the most reliable if adequate data were available. In return, Hutchinson County selects Whitford's admissions that he used the income capitalization approach because the market value was not applicable in that he felt there were so many influencing factors he was incapable of determining, and that the difference in values placed on Jones' land could be a difference in opinion.

■■■ Our consideration of the quality and quantum of the evidence must begin with the presumption that the board of equalization acted in good faith and discharged its duty as a public agency according to law, *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569, 573 (1954), although exact uniformity and equality of taxation is unattainable. *Darby v. Borger Independent School District*, 386 S.W.2d 572, 577 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.). Thus, no attack on valuations fixed by the board can or will be sustained in the absence of proof of fraud, want or jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation. *State v. Whittenburg, supra*, 265 S.W.2d at 572–73.

■■■ In this connection, whether the board failed, as Jones contends, to follow the dictates of Article VIII, Section 1–d in valuing and assessing his property was, as the foregoing evidential summary discloses, a disputed fact issue. There being evidence to support the court's finding, we cannot hold that constitutional noncompliance was conclusively established. *Rourke v. Garza*, 530 S.W.2d 794, 799 (Tex.1975). Moreover, it was the province of the trial court, as the fact finder, to resolve the conflicts and inconsistencies in the testimony by judging the credibility of the witnesses and the weight to be given their testimony. *McGee v. McGee*, 537 S.W.2d 94, 97 (Tex.Civ.App.—

Amarillo 1976, no writ). As corollary, the court occupied the same role in judging the evidence of market value by way of expert testimony. *Tenneco, Inc. v. Polk County,* 560 S.W.2d 416, 417 (Tex.Civ.App.—Beaumont 1977, no writ). Furthermore, a mere difference of opinion as to the reasonableness of valuations, though erroneous as the result of honest judgment, will not warrant interference by the courts. *Druesdow v. Baker,* 229 S.W. 493, 495 (Tex.Comm'n.App. 1921, judgmt. adopted). We, then, cannot say that the court's findings are against the great weight and preponderance of the evidence.

Consequently, the attacks on the court's findings must fail. Their failure effectively disposes of Jones' complaint that because the taxes for 1977 and 1978 were illegal and grossly excessive, the court erred in rendering judgment.

Next, Jones contends it was error for the court to conclude that he did not suffer "substantial injury," because that standard imposed an erroneous burden of proof on him. Interestingly, Jones pleaded, in one instance, for injunctive relief on the theory that the board of equalization and the tax assessor-collector "have and will put into effect an arbitrary, illegal and fundamentally erroneous plan or scheme of assessment and taxation, resulting in *substantial injury* to Plaintiffs [Jones] as follows [emphasis supplied]:".

■ Beyond that, Jones has explained to the wrong court why "the 'substantial injury doctrine' stems from faulty reasoning or no reasoning and misapplication of authority." Our court of supreme jurisdiction requires that burden of proof, an exemplar of which is this language from *Whelan v. State, supra,* 282 S.W.2d at 380:

> But the mere fact that taxing authorities arbitrarily disregard the true and legal basis of arriving at assessed valuations does not, of itself, entitle a litigating taxpayer to relief. To be entitled to relief he must also show that the arbitrary or unlawful plan or scheme of arriving at assessed valuations resulted in substantial injury to him.

We are bound by the pronouncements of the Texas Supreme Court on the law until the Court states to the contrary. *Woodard v. Texas Dept. of Human Resources,* 573 S.W.2d 596, 598 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.).

■ As a final matter, Jones states that the court erred in rendering judgment for statutory penalties inasmuch as he had timely tendered into the registry of the court the amount of taxes he admitted were due. We note, however, that Jones' tender, based on his rendition, was coupled with a prayer that upon acceptance of the tender, he be released from any further liability for the taxes for the years 1977 and 1978. We cannot agree that the conditional tender relieved Jones from the statutory penalties included in the judgment.

■ A tender based upon the taxpayer's rendition is ineffectual to avoid the statutory penalties for taxes legally assessed. For one to escape liability for the statutory penalties, a tender of the amount of taxes legally due is necessary. *Electra Independent Sch. Dist. v. W. T. Waggoner Estate,* 140 Tex. 483, 168 S.W.2d 645, 652 (1943).

We have considered all of the facets of each point of error although the extent of the consideration may not have been stated herein. Finding that Jones has not demonstrated error which would justify any change in the judgment, we overrule all of his points of error.

The judgment is affirmed.

COUNTISS, J., not participating.