GRANITE CONSTRUCTION
COMPANY, Appellant,

v.

Rebecca MENDOZA, Individually, As Representative of The Estate of Felix Mendoza, Sr., Deceased, and as Next Friend of Cecilia Mendoza and Felix Mendoza, Jr., Appellee.

No. 05–90–00710–CV.

Court of Appeals of Texas,
Dallas.

July 5, 1991.

Rehearing Denied Aug. 30, 1991.

Thomas S. Leatherbury, Cynthia Keely Timms, Dallas, Peter G. Thompson, Charles K. Hadden, Washington, D.C., for appellant.

Randall E. Hand, Robert H. Osburn, Ralph C. Jones, Dallas, for appellee.

Before WHITHAM, KINKEADE and WHITTINGTON, JJ.

## OPINION

WHITHAM, Justice.

Felix Mendoza, Sr. died as the result of an on-the-job accident during the course of his employment on a road construction project undertaken by Mendoza's employer, appellant, Granite Construction Company.

Appellee, Rebecca Mendoza, individually, and as representative of the Estate of Felix Mendoza, Sr., deceased, and as next friend of Cecilia Mendoza and Felix Mendoza, Jr., brought this action seeking exemplary damages for gross negligence arising out of a workers' compensation death claim. Of Granite Construction's five points of error, Granite Construction abandoned its third and fifth. Thus, we do not reach and address these points of error. In its first two points of error, Granite Construction challenges the legal and factual sufficiency of the evidence to support jury findings of gross negligence and proximate cause. We find no merit in these points of error. In its fourth point of error, Granite Construction complains of the award of prejudgment interest. We sustain this point of error. Accordingly, we reverse the trial court's judgment insofar as it awards Mendoza pre-judgment interest. We render judgment that Mendoza take nothing against Granite Construction for pre-judgment interest. We affirm the remainder of the trial court's judgment.

In its first point of error, Granite contends that the evidence was legally and factually insufficient to support the jury's finding of gross negligence. A "legally insufficient" point is a "no evidence" point presenting a question of law. In deciding that question, we must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985) (on reh'g). If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interests of justice require another trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). It is fundamental that these fact findings must be upheld if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown Sav. & Loan Ass'n,* 595 S.W.2d 486, 488 (Tex.1979). In reviewing "factually insufficient" points, we consider all the evidence including any evidence contrary to the judgment. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.

1980). A finding can be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Applying these principles, we must first determine if there is evidence of probative value to support the jury's findings. When both "no evidence" and "insufficient evidence" points of error are raised in the court of appeals, the court should rule upon the "no evidence" point first. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981).

Ordinarily we would, therefore, first consider only the evidence and the inferences tending to support the trial court's findings disregarding all evidence and inferences to the contrary. We conclude, however, that we need not do so for two reasons. First, at oral argument, Granite Construction conceded that its legally insufficient challenge would require this court to disregard our Supreme Court's decision in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex. 1981). Needless to say, we decline to disregard Supreme Court decisions. We are bound by the pronouncements of the Texas Supreme Court on the law until the Court states to the contrary. *Jones v. Hutchinson County,* 615 S.W.2d 927, 933 (Tex.Civ. App.—Amarillo 1981, no writ). Indeed, Granite Construction tells us that its legally insufficient challenge appears in its brief to preserve its posture to persuade the Supreme Court to change its holding in *Burk Royalty.* Regardless, however, of Granite Construction's asserted effort to preserve the matter for Supreme Court review, we note a second reason why we need not rule upon Granite Construction's "no evidence" point "first" or at any time. The reason lies in Granite Construction's failure to brief and argue its legally insufficient challenge. Instead, Granite Construction casts its argument in terms of "against the great weight and preponderance of the evidence." Consider Granite Construction's opening paragraph in its argument under its first point of error:

The overwhelming weight of the evidence establishes that Granite lacked the mental attitude necessary to support the

jury's finding of gross negligence and justify an award of punitive damages. As we show below, the evidence convincingly demonstrates that the Company cared about the safety of its employees— including Felix Mendoza—and that it did not decide to ignore a known peril.

Next, consider the closing sentence of Granite Construction's argument: "The overwhelming weight of the evidence negates objective proof of gross negligence." We emphasize that nowhere between opening paragraph and closing sentence does Granite Construction argue "no evidence." Hence, we conclude that Granite Construction failed to present to this court its "no evidence" point of error challenging the legal sufficiency of the evidence to support the jury's finding of gross negligence. Points of error not separately briefed are waived. *La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 568 (Tex.1984) (on reh'g). A point of error that is not briefed fails to meet the minimum requirements of rule 414(e), Texas Rules of Civil Procedure [Now TEX.R.APP.P. 74(f) ], and the appellate court considers such a point to be waived. *Schero v. Astra Bar, Inc.,* 596 S.W.2d 613, 614 (Tex.Civ.App.— Corpus Christi 1980, no writ). By failing to present this argument and point of error, Granite Construction has waived its right to complain. We are not authorized to reverse a trial court's judgment in the absence of a properly assigned error. *Gulf Consolidated Int'l, Inc. v. Murphy,* 658 S.W.2d 565, 566 (Tex.1983); *Mullinax, Wells, Baab & Cloutman v. Sage,* 692 S.W.2d 533, 536 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (on reh'g). We overrule Granite Construction's first point of error insofar as it challenges the legal sufficiency of the evidence to support the jury's finding of gross negligence.

Thus, we turn to our assigned task of deciding whether the evidence is factually sufficient to support the jury's finding. In doing so, we must apply the instructions of *Burnett v. Motyka,* 610 S.W.2d at 736, as directed in *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633–36 (Tex.1986). We now provide the analysis of all the evidence which must be weighed and considered in deciding whether the evidence is factually sufficient to support the jury's finding.

### What the Jury Heard Which Granite Construction Contends to Be Contrary to the Finding

*Granite Construction's Safety Program.* From top management on down, Granite Construction had "a very strong feeling about the place of safety in the workplace." Granite Construction appointed a corporate Safety Coordinator, Bruce Summers, who developed safety policy and a safety program, consulted and advised on employee safety, and monitored the effectiveness of Granite Construction's safety efforts. Summers belonged to the American Society of Safety Engineers and was certified as an instructor for the Occupational Safety and Health Administration ("OSHA"), the federal agency in charge of workplace safety. As part of its safety program, Granite Construction developed a slide presentation on safety, which it showed to new employees before they began work. Granite Construction also required all new employees to read a booklet entitled "Job Safety and You," which addressed various safety rules and procedures. Granite Construction promulgated "Rules of Conduct" that largely concern job safety and mandated that new employees read them before beginning work. Granite Construction verified that new employees had read the Rules, had received a copy of "Job Safety and You" and would become familiar with it, and had viewed the safety presentation by having the employees acknowledge their compliance in writing. The booklet, the Rules, and corporate policy encouraged employees to point out hazardous conditions so that Granite Construction could correct them.

Granite Construction implemented its safety program at specific work sites. At the Highway 121 project, where Granite Construction was the general contractor, Granite Construction had a traffic control plan approved by the State. Pursuant to the plan, Granite Construction erected signs warning traffic of construction activities, and placed high visibility safety bar-

rels on the edge of the road at various locations, including the area where the accident occurred. The signs warned motorists of "Road Construction Ahead" and at various distances (*e.g.*, 1500, 1000 and 500 Feet Ahead), and admonished them to "Observe Warning Signs, State Law." The barrels were approximately 36 inches tall and 18 inches in diameter, with alternating orange and white, reflectorized, 4 to 8 inch stripes, running horizontally around their circumferences. The barrels were highly visible, had good target value, appeared to be formidable obstacles, and commanded the respect of drivers. As part of the traffic control plan, the State mandated that, in certain instances, Granite Construction employees work no more than three or four feet away from a lane of traffic without closing that lane. However, when Granite Construction knew that its employees would be working on the road itself, it protected them by closing that lane of traffic or using flagmen to direct traffic and requiring the workers to wear high visibility safety vests.

At the Highway 121 project, Granite Construction conducted regular and frequent safety meetings. On the first Monday of every month, Sam Joiner, the project manager, conducted meetings that Granite Construction required—and paid—all of its employees to attend. Joiner was OSHA-certified in construction safety and health and attended Granite Construction corporate safety seminars. The meetings began with a discussion of the prior month's safety record. If any accidents had occurred, Joiner discussed them in detail, focusing on their cause and prevention of similar accidents in the future. Joiner previewed the upcoming work and any special safety concerns it presented. Joiner reviewed sections of Granite Construction's safety manual to "refresh everyone's memory." Joiner next called upon his supervisory staff to fill in anything he had missed and to discuss any additional safety ideas they might have. Then Joiner encouraged all employees to express their concerns. Finally, Joiner gave out safety awards, rewarding those employees who had worked certain numbers of hours without an accident.

In addition to the monthly meetings, Granite Construction held two separate weekly safety meetings. Every Friday, Joiner met with his superintendents and engineers to discuss the next week's work and any special safety problems they could anticipate. Every Monday, the foremen conducted "tool box" or "tailgate" meetings for their crews on various safety topics. The foremen took attendance, required the employees to sign in, and turned in a list of discussion topics to the office manager. On a daily basis, Russell Wade, foreman of the laborers, warned his crew before they began work to make sure they watched the traffic and wore safety vests if they were going to be working "out in traffic."

*Mendoza's Hiring.* On Monday, January 27, 1987, Mendoza came to the Highway 121 project and inquired about a job with Granite Construction. Mendoza told Granite Construction's office manager, John Black, that he was a laborer and had worked construction jobs before. After consulting with Wade, Black hired Mendoza. That day, before Mendoza ever began working, Black showed him Granite Construction's slide show on safety, gave him a copy of "Job Safety and You," and provided him with a copy of the Company's "Rules and Conduct." Mendoza signed the Rules, acknowledging that he had read them, had seen the film, and had received and would become familiar with the safety booklet. Black also advised Mendoza that he would receive a protective hard-hat and warned him not to wear tennis shoes on the job because they were inappropriate and violated Granite Construction's safety policy. Mendoza left the work site, taking the safety booklet home with him that evening. The next morning, Mendoza reported for work. Black provided him with a hard-hat, checked to make sure that he was wearing the proper shoes, and sent him out to meet Wade, his foreman. Although the monthly and weekly safety meetings had already taken place, Mendoza arrived in time to attend Wade's daily safety talk with his crew. Wade spoke directly with Mendoza

about watching the traffic and wearing a safety vest while actually working in traffic.

*The Accident.* Later that morning, Larry Kite, Granite Construction's superintendent, directed Tony Theriault, another Granite Construction employee, to use his front-end loader to remove a lightweight drainage pipe from alongside the southbound lanes of Highway 121. The 40 foot long pipe was lying in a ditch parallel to and about three and one-half feet back from the road. Due to the construction, the highway had no shoulder and was ten inches higher than the adjacent ground where the work was to be performed. Kite asked Wade to send two laborers to steady the pipe while Theriault picked it up from the bucket of his front-end loader and carried it back, away from the highway. Wade assigned Mendoza and Willard Childress, another laborer, to steady the pipe. Wade considered the procedure to be routine and believed it would take five to ten minutes. Neither Wade nor anyone else anticipated that any of the employees would have to work on the road surface. Theriault was to be seated in the loader, facing the highway, and Mendoza and Childress were to begin the operation on the side of the pipe away from traffic and move even farther away from the road as the loader backed up. There was a dispute in the testimony as to whether Childress had requested a safety vest from Wade. Childress claimed that he had asked for safety vests, but Wade refused to provide them. Wade said that no one had requested a vest. Wade also testified that, consistent with Granite Construction's policy, he would have provided Mendoza and Childress with vests if he had believed they were going to be working in traffic.

After the laborers arrived, Theriault picked up the pipe with the bucket of his front-end loader, but the pipe fell off and rolled forward until it was about a foot from the road. Theriault again scooped up the pipe and, with Mendoza and Childress steadying opposite ends of the pipe, began to curl the bucket back towards him. As he did so, the front-end loader stalled. The sudden stop caused the pipe to start "wig-

gling around on the end." When this happened, Mendoza moved between the pipe and the road with his back to the traffic. The movement of the pipe pushed him backwards, causing him to stumble into the closest lane of traffic, where a speeding pickup truck struck and killed him. The driver did not stop and has not been located.

OSHA, the federal agency charged with protecting the safety and health of the nation's work force, *see* 29 U.S.C. §§ 651 *et seq.*, cited Granite Construction for failing to provide flagmen or other appropriate traffic controls and for improperly training its employees. The agency proposed a $980.00 penalty for the two violations, which reflected a 30 percent reduction for Granite Construction's good faith. OSHA did not cite Granite Construction for a willful violation, that is, one committed with intentional disregard or plain indifference to safety requirements. *See Georgia Elec. Co. v. Marshall,* 595 F.2d 309, 317–19 (5th Cir.1979); 29 U.S.C. § 666(a). OSHA ultimately dismissed the alleged training violation, reduced the penalty to $490.00, and allowed Granite Construction to settle the citation without admitting liability.

Therefore, on the basis of the above evidence, Granite Construction maintains, in its words, that "[a]pparently by ignoring the overwhelming evidence of Granite Construction's concern for its employees' safety, the jury found [Granite Construction] 'grossly negligent.'" Thus, we reach consideration as to what the jury heard said to support the finding of gross negligence.

### What the Jury Heard Which Mendoza Contends Supports the Finding

When Larry Kite, Granite Construction's dirt superintendent, asked Russell Wade to send a couple of laborers to assist Theriault, Wade told Mendoza and Childress to "go do whatever you got to do" and drove them to the site of the dirt ramp. The ramp was placed along the edge of Highway 121 to allow concrete mixers and other trucks to enter and exit the work area since the work area was about 8 to 10 inches

lower than the surface of the road. A 40 foot drainage pipe was under the ramp, about one foot from the heavily travelled road. When Childress saw the work site, he asked Wade for a pair of bright orange vests. "[S]ince we was going to be working that close to the traffic so that the people could see us with the vest on...."

But he said we wasn't going to be there that long, so he didn't give us one." Wade and Kite did not stay at the work site to supervise the three laborers. Granite Construction did not close off the inside lane of traffic with barrels or flagmen. An exhibit depicts the scene as follows:

## PLAINTIFF'S EXHIBIT 4[1]

← Mendoza

Theriault attempted to scoop up the pipe with the front-end loader, but it rolled off, coming to rest against steel rebar that protruded about one foot from the road. On the second try, Mendoza and Childress each grabbed an end of the pipe to steady it on the loader's toothless bucket. Ther-

iault curled the bucket up to lift the pipe. When the bucket reached its maximum curl, the engine of the front-end loader stalled, causing the loader to jerk forward, toward the highway. The pipe started rolling off the bucket. Mendoza, with his back to the road, holding the pipe, was pushed

1. To this exhibit depicting the accident scene we have added "Mendoza" to identify him in the exhibit.

into the road. As Mendoza stumbled, a green pickup truck traveling in the inside lane of traffic struck Mendoza. Mendoza was hurled down the road, suffering severe injuries. Mendoza died shortly thereafter.

Wade testified that he had the ability to close the inside lane of traffic, had done it in the past, and did not do so on this date. He admitted that it would be disregard of a person's safety if a crew member told him he needed a safety vest and Wade didn't give him one. Charles May, Granite Construction's Project Engineer for the Highway 121 project, testified that he knew that placing a man adjacent to a heavily traveled highway like Highway 121 without an orange colored safety vest was a dangerous situation. May also admitted that it was a dangerous situation to have a man adjacent to Highway 121 so that he would work within a foot of the roadway without closing the inside lane of traffic. Mendoza's expert witness, R.T. Abrahamson, testified that Mendoza was placed in an unsafe work area. Abrahamson stated that Granite Construction's safety program was poor to nonexistent. Granite Construction did not provide proper supervision for the job. The wrong equipment was used for the job, and it was improperly maintained. In Abrahamson's opinion Granite Construction exhibited such an entire want of care for the rights and safety of Mendoza as to rise to a level of conscious indifference and constitute gross negligence. Samuel Joiner, Granite Construction's Project Manager for the Highway 121 project, agreed that a lane of traffic should be closed if men are working as close as one foot to the pavement. Joiner testified that Granite Construction had arranged to close a lane of traffic without specifically asking approval from the representative of the State Department of Highways every time one of Granite Construction's trucks needed to cross the road. Bob Julian, the representative of the Highway Department, said that the approval process was very informal; that Granite Construction could have closed the lane of traffic anytime they wanted to without getting advance approval from the Highway Department and that is the way the Highway Department instructed Gran-

ite Construction to operate. Roy Anderson, former Director of Safety Programs for the National Transportation Safety Board, co-author of the section of the Texas Manual on Uniform Traffic Control Devices relating to fundamental principles of work zones, testified that the work zone safety at the location Mendoza died was inadequate, created a dangerous condition, and exposed Mendoza to an extreme degree of risk to his safety. Anderson also testified that Granite Construction would have, and should have, realized that its conduct created an extreme degree of risk to the safety of Mendoza and others. In Anderson's opinion, this was a foreseeable accident.

### Gross Negligence

■■■ Before proceeding to a discussion of gross negligence, we observe the alternatives available to the jury when presented with conflicting evidence. The trier of fact has several alternatives available when presented with conflicting evidence. It may believe one witness and disbelieve others. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). The trier of fact may resolve inconsistencies in the testimony of any witness. *McGalliard*, 722 S.W.2d at 697. The trier of fact may accept lay testimony over that of experts. *McGalliard*, 722 S.W.2d at 697. Applying these principles, we conclude that the jury in the present case could believe all or any part of the testimony of any witness and disregard all or any part of the testimony of any witness. Indeed, the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962).

■■■ With the jury's alternatives in mind, we pause to reflect upon what our Supreme Court tells us about gross negligence in a suit for exemplary damages arising out of a workers' compensation claim. *See Burk Royalty*, 616 S.W.2d at 916–24. The essence of gross negligence is not the neglect which must, of course, exist. What lifts *ordinary* negligence in to *gross* negligence is the mental attitude of

the defendant; that is, what justifies the penal nature of the imposition of exemplary damages. *Burk Royalty*, 616 S.W.2d at 922. The plaintiff must show that the defendant was consciously, *i.e.*, knowingly, indifferent to his rights, welfare, and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care. *Burk Royalty*, 616 S.W.2d at 922. Such conduct can be active or passive in nature. Our Supreme Court has disapproved language in prior cases suggesting that a distinction should be made between them in determining the existence of gross negligence. *Burk Royalty*, 616 S.W.2d at 922. The existence of gross negligence need not rest upon a single act or omission, but may result from a combination of negligent acts or omissions, and many circumstances and elements may be considered in determining whether an act constitutes gross negligence. A mental state may be inferred from actions. *Burk Royalty*, 616 S.W.2d at 922. All actions or circumstances indicating a state of mind amounting to a conscious indifference must be examined in deciding if there is some evidence of gross negligence. *Burk Royalty*, 616 S.W.2d at 922. Moreover, the jury also could well infer that the testimony about the existence of safety meetings, safety rules on bulletin boards and fire extinguisher was untrue or that any safety rules which did exist were just for "show." *Burk Royalty*, 616 S.W.2d at 923.

We conclude that the evidence is factually sufficient to establish a mental attitude on the part of Granite Construction showing that Granite Construction was consciously indifferent to Mendoza's rights, welfare, and safety. In the language of *Burk Royalty*, we conclude that Mendoza showed that Granite Construction knew about the peril, but its acts and omissions demonstrated that it did not care. *See Burk Royalty*, 616 S.W.2d at 922. It follows that, considering all the evidence, we conclude that the evidence is factually sufficient to support the jury's finding of gross negligence. Considering and weighing all the evidence, we are unable to state in what regard the contrary evidence great-

ly outweighs the evidence in support of the jury's finding. *See Pool*, 715 S.W.2d at 635. In the present case, therefore, we cannot hold that the jury's finding is factually insufficient. Moreover, we cannot hold that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, or that the jury's finding shocks the conscience of this court or that the jury's finding clearly demonstrates bias. *See Pool*, 715 S.W.2d at 635. Indeed, we conclude that to so hold in the present case would abuse our authority under article V, section six of the Constitution of the State of Texas and deprive Mendoza of her right of trial by jury afforded her by article I, section fifteen of the Texas Constitution. In short, we cannot agree to "unfind" the jury's finding and substitute our judgment for that of the jury. We hold, therefore, that the evidence is factually sufficient to support the jury's finding of gross negligence. We overrule Granite Construction's first point of error.

### Proximate Cause

In its second point of error, Granite Construction contends that the evidence is legally and factually insufficient to support the jury's finding of proximate cause. In this connection, Granite Construction relies upon the facts argued under its first point of error. Furthermore, Mendoza responds to both the first and second points of error under a joint reply argument. As to Granite Construction's second point of error, we note Granite Construction's waiver of its legally insufficient challenge to support a jury's finding, in this instance that of proximate cause. Again, Granite Construction opens its argument with language complaining only of a finding said to be against the great weight and preponderance of the evidence. In this instance, Granite Construction begins its argument by telling us that "[j]ust as the jury's finding that the company was grossly negligent is against the overwhelming weight of the evidence, so is the determination that Granite Construction's gross negligence proximately caused Mendoza's death." For the reasons given above for concluding that Granite

Construction waived its legal insufficiency challenge to the jury's finding of gross negligence, we conclude that Granite Construction waived also its legal insufficiency challenge to the jury's finding of proximate cause. We reach this conclusion because Granite Construction failed to present by argument its "no evidence" point of error. We overrule Granite Construction's second point of error insofar as it challenges the legal sufficiency of the evidence to support the jury's finding of proximate cause.

 Next, we address our assigned task of deciding whether the evidence is factually sufficient to support the jury's finding of proximate cause. The rules governing the process of this determination are set forth above. Proximate cause includes two essential elements: (1) foreseeability, and (2) cause in fact. Both elements must be present and may be established by direct or circumstantial evidence. Proximate cause cannot be established by mere guess or conjecture, but rather must be proved by evidence of probative force. *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980). Granite Construction argues the issue of foreseeability only. Foreseeability is satisfied by showing that the actor, as a person of ordinary intelligence, should have anticipated the danger to others by his negligent act. *McClure,* 608 S.W.2d at 903. Considering all the evidence, we conclude that the evidence is factually sufficient to support the jury's finding of proximate cause. Considering and weighing all the evidence, we are unable to state in what regard the contrary evidence greatly outweighs the evidence in support of the jury's finding. *See Pool,* 715 S.W.2d at 635. In the present case, therefore, we cannot hold that the jury's finding is factually insufficient. Moreover, we cannot hold that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, or that the jury's finding shocks the conscience of this court or that the jury's finding clearly demonstrates bias. *See Pool,* 715 S.W.2d at 635. Indeed, we conclude that to so hold in the present case would abuse our authority under article V, section six of the Constitu-

tion of the State of Texas and deprive Mendoza of her right of trial by jury afforded her by article I, section fifteen of the Texas Constitution. In short, we cannot agree to "unfind" the jury's finding and substitute our judgment for that of the jury. We hold, therefore that the evidence is factually sufficient to support the jury's finding of proximate cause. We overrule Granite Construction's second point of error.

### Constitutional Challenges

In its third point of error, Granite Construction contends that the trial court erred in awarding $2,250,000.00 damages because the award and the procedures employed in making the award violate the federal and state constitutions. Granite Construction, however, tells us in its reply brief that: "In view of the United States Supreme Court's decision in *Pacific Mutual Life Insurance Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), Granite abandons this point of error." Consequently, we need not reach or address Granite Construction's third point of error.

### Pre–Judgment Interest

 In its fourth point of error, Granite Construction contends that the trial court erred in awarding pre-judgment interest on exemplary damages because the Mendozas filed their petition before the effective date of the statutory provision allowing for pre-judgment interest. First, we must address a procedural problem arising out of the timing of Granite Construction's challenge in the trial court to the award of pre-judgment interest. Mendoza insists that Granite Construction waived its challenge to the award. Mendoza's waiver argument is grounded on the filing date of Granite Construction's amended motion for new trial. It was in this amended motion for new trial that Granite Construction first complained of the award of pre-judgment interest. Here then are applicable dates and events:

February 21, 1990 Motion for new trial filed

February 21, 1990 Trial court orally denied motion for new trial

February 23, 1990 Trial court entered judgment in case

March 1, 1990 Amended motion for new trial filed (raising pre-judgment interest issue)

March 1, 1990 Trial court entered written order denying Granite Construction's motion for judgment n.o.v. and for new trial.

As for the timing of events on March 1, 1990, we learn from the record that the district court clerk's office does not stamp the time of filing on the pleadings it receives. It does, however, keep a computerized list of docket entries. Granite Construction's amended motion appears on that list before the trial court's order overruling the motion for judgment n.o.v. and new trial. We decline to address all the procedural "ins and outs" of this matter. Suffice it to say that we treat the amended motion as having been filed before the order of March 1, 1990. Thus, we apply the liberal interpretation given filing of court documents on the same day by the Supreme Court. Appellate review of trial court judgments disposing of the substantive rights of litigants is a valuable right and should not be denied when under a liberal interpretation of the rules it is possible to give it. *Airco, Inc. v. Tijerina*, 603 S.W.2d 785, 786 (Tex.1980) (quoting *Bay v. Mecom*, 393 S.W.2d 819, 820 (Tex.1965)). Consequently, we deem Granite Construction's amended motion for new trial to have been on file before the trial court filed its order on the motion for judgment n.o.v. and new trial. Because the amended motion complained of the pre-judgment interest award, that point was adequately presented in the trial court. Therefore, we now address the merits of Granite Construction's complaint as to the award of pre-judgment interest.

The Supreme Court has recognized two separate bases for the award of prejudgment interest: (1) an enabling statute and (2) general principles of equity. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex.1985). As to an enabling statute, Mendoza concedes that the only statute that even arguably provides grounds for prejudgment interest is TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6(a) (Vernon Supp.1991). Nevertheless, Mendoza candidly admits "that this statute was effective September 1, 1987, and applies only to actions commenced on or after the effective date or to a new trial or retrial following appeal of the trial court's judgment in an action commenced before the effective date." Mendoza further tells us that "this case was filed on April 16, 1987. The law in effect prior to September 1, 1987, was *Cavnar*." We conclude, therefore, that no statutory basis exists for the award of pre-judgment interest. Hence, we proceed to the second basis for the award of pre-judgment interest, *i.e.*, general principles of equity.

As to the second basis, again we look to *Cavnar*. We conclude that equitable considerations cannot justify an award of prejudgment interest in the present case. We reach this conclusion because the purposes of pre-judgment interest and exemplary damages are incompatible. *See Cavnar*, 696 S.W.2d at 552, 555–56. The paramount purpose of awarding exemplary damages is *not* to compensate the plaintiff, but to punish and set an example for others. *Anderson v. Trent*, 685 S.W.2d 712, 714 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). *Accord Cavnar*, 696 S.W.2d at 555. By contrast, pre-judgment interest is not intended to punish the defendant's misbehavior. *Matthews v. DeSoto*, 721 S.W.2d 286, 287 (Tex.1986). We conclude, therefore, that because exemplary damages do not compensate, pre-judgment interest on them is not necessary to make a plaintiff whole. *See Cavnar*, 696 S.W.2d at 556.[2] Conse-

---

2. The Texas legislature has expressly prohibited prejudgment interest on exemplary damages in the Civil Practice and Remedies Code. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 41.006 (Vernon Supp. 1991). While this action falls outside both the effective date and scope of the Remedies Code, *see* TEX.CIV.PRAC. & REM.CODE ANN. § 9.001 note (Vernon Supp.1991) (effective date); TEX.CIV. PRAC. & REM.CODE ANN. § 41.002(b)(4) (Vernon Supp.1991) (scope), the general statutory bar, which reflects a codification of pre-existing judi-

quently, we conclude further that general principles of equity provide no basis for the award of pre-judgment interest. Because no basis exists in the present case for the award of pre-judgment interest, we conclude that the trial court erred in awarding pre-judgment interest on exemplary damages. We sustain Granite Construction's fourth point of error.

### Post–Judgment Interest

In its fifth point of error, Granite Construction contends that the trial court erred in awarding post-judgment interest on a compound, rather than simple, basis because the Mendozas filed their petition before the effective date of the statutory provision allowing for compound interest. Granite Construction, however, tells us in its reply brief that: "Granite has examined the Mendozas' argument concerning waiver of the post-judgment interest issue. As a result of that examination, the Company abandons this point of error." Consequently, we need not reach or address Granite Construction's fifth point of error.

We reverse the trial court's judgment insofar as it awards Mendoza pre-judgment interest. We render judgment in favor of Granite Construction and against Mendoza that Mendoza take nothing against Granite Construction for pre-judgment interest. We affirm the remainder of the trial court's judgment.

KINKEADE, J., dissents.

KINKEADE, Justice, dissenting.

I respectfully dissent. I would hold that the jury's finding that Granite Construction Company was grossly negligent is so against the great weight and preponderance of the evidence as to be manifestly unjust.

### GROSS NEGLIGENCE

In its charge to the jury, the court defined "gross negligence" as follows:

"GROSS NEGLIGENCE" means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it.

The court also instructed the jury that "[a] corporation has a duty to provide rules and regulations for the safety of its employees, to furnish safe machinery and instrumentalities, to provide a safe place to work and to select careful and competent fellow servants."

For a party to recover exemplary damages on the basis of gross negligence requires that the defendant exercise such an entire want of care that it raises the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons affected by it. Gross negligence means *more than* momentary thoughtlessness, inadvertence, or *error of judgment. Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981). The jury must consider the phrase "entire want of care" in the context of the whole sentence. The jury must find such an entire want of care that it shows the acts or omissions resulted from conscious indifference. Ordinary negligence becomes gross negligence as a result of the mental attitude of the defendant. The plaintiff must show that the defendant was consciously or knowingly indifferent to the plaintiff's rights, welfare, or safety. The plaintiff must show that the defendant knew about the peril, but his acts or omissions, whether passive or active, demonstrated that he did not care. *Id.* at 922.

When determining a factual sufficiency point of error, this Court must consider and weigh all the evidence in the case. It should set aside the verdict and remand the cause for a new trial if it concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, regardless of whether the record contains some evidence of probative force in support of the verdict. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986). It is an erroneous ruling of law that the existence of any evidence of probative force in support of the verdict determines

cial decisions, confirms the incompatibility of

pre-judgment interest and punitive damages.

that the verdict is not contrary to the overwhelming weight of all the evidence. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

Mendoza asserted that the following acts or omissions by Granite Construction evidenced gross negligence:

1. Failure to provide rules and regulations for the safety of employees.
2. Failure to properly train Mr. Mendoza before he began work.
3. Failure to provide Mr. Mendoza with a visible safety vest.
4. Failure to close the adjacent lane of traffic or otherwise divert traffic from it.
5. Failure to provide safe equipment for the employees to use.

1. *Failure to Provide Rules and Regulations for the Safety of Employees.*

The record reflects that Granite Construction had an extensive safety program led by trained professionals—a safety booklet, safety rules, a safety videotape, paid mandatory monthly and weekly safety meetings, safety awards, and daily safety talks. I believe the majority, citing *Burk Royalty*, 616 S.W.2d at 923, erroneously concludes that the jury could infer that Granite Construction's safety program was just for show. In *Burk Royalty*, some crew members had never attended a safety meeting, never been instructed about safety or fires, and never been shown a copy of the safety rules. Further, although the men worked around a highly flammable material, several crew members smoked and were unaware of any rule against it. They testified that they did not believe there was a no smoking sign on the rig, and did not know whether there were any fire extinguishers on the rig. Under those facts, the inference that the safety program was just for show was reasonable.

Under the facts in this case, that inference is unreasonable. Thierault and Childress, the only two employees present at the time of the accident besides Mr. Mendoza, both testified. Although Thierault admitted that he never read the safety booklet, he stated that he knew of its existence, had attended the monthly safety meetings, and had been told to always watch the traffic. Although Childress testified that he did not remember signing the safety booklet, he stated that he had received it, had watched the safety videotape, had attended the weekly safety meetings, and had been told never to turn his back on the traffic. Further, Childress's actions on the day of the accident evidence the effectiveness of the program:

1. He asked for an orange safety vest prior to starting the job, when he thought he would be working close to traffic.
2. He watched the traffic and saw the pickup truck when it was a half block away.
3. He faced the traffic at all times.

Other testimony showed that on the day he was hired, Mr. Mendoza received a copy of the safety booklet, received a copy of the safety rules, and viewed the safety videotape. The next day, prior to beginning work, he was given a hardhat, he was checked for proper shoes, and his supervisor discussed the importance of watching the traffic and wearing a safety vest when actually working in traffic. Further the evidence shows that, up until the time Mr. Mendoza reacted to the pipe rolling forward, he had followed the company's safety rules.

At the time their supervisor assigned the men to the job, he was under the impression that the brief job would take the men away from the roadway and received no information to the contrary until after the accident. I believe that it is wrong to conclude that one man's judgment not to provide a safety vest or take further safety measures under these facts raises an inference that the safety program was for show. The safety program reflects Granite Construction's concern for its employee's rights, welfare, and safety.

The only evidence introduced to support a jury finding in this area was Mendoza's expert, Abrahamson's, testimony. He stated that Granite Construction's safety program was nonexistent and only consisted of showing some slides and handing out a

pamphlet. Abrahamson, however, ignored the "Rules of Conduct" and the frequent safety meetings in reaching this opinion and admitted that he never viewed the slides. He also discounted the daily safety talks that Wade gave his crew as having no effect after the first few times, without taking into consideration that Mr. Mendoza had heard it for the first time on the morning of the accident.

### 2. *Failure to Properly Train Mr. Mendoza Before he Began Working.*

Granite Construction hired Mr. Mendoza as a manual laborer. His job included doing tasks like shoveling dirt or concrete and lifting materials. It did not include running heavy equipment or doing any type of masonry work. His job required no special skill or training. Mendoza introduced no evidence of what additional training Mr. Mendoza should have received before beginning work as a manual laborer. Further, even though OSHA originally cited Granite Construction for a training violation, this alleged violation was ultimately dismissed. Given Mr. Mendoza's job description, I find no support for the jury's finding that Granite Construction's failure to give Mr. Mendoza additional training demonstrated such an entire want of care as to reach the level of conscious indifference.

### 3. *Failure to Provide Mr. Mendoza with a Visible Safety Vest.*

The evidence showed that Granite Construction's policy was to provide their employees with safety vests when they were working in traffic. It also showed that Mr. Mendoza's supervisor was under the impression that Mr. Mendoza would be moving away from rather than toward and into the traffic. Mendoza's own experts testified that Granite Construction did not plan for anybody to be in the roadway. Further, one expert testified that the wearing of an orange vest would not have prevented the accident and the other testified that "[i]f the driver of the pickup had no time to react, then a vest would not be much of a deterrent." Since the need for a safety vest was not apparent and the wearing of

one would not have prevented the accident, there is no support for the jury finding of gross negligence for this omission.

### 4. *Failure to Close the Adjacent Lane of Traffic or otherwise Divert Traffic Away from the Work Area.*

Evidence showed that Granite Construction closed traffic lanes or used flagmen to redirect traffic when it knew that its employees would be working on the road itself. Several times in the past the State had denied Granite Construction permission to close a lane. Further, the State required notice of the lane closure the day before so that the public could be notified. Nothing of a physical nature was more dangerous on this job than closing a lane. It required that men be exposed to traffic for a period of twenty to thirty minutes. Additionally, because of the road's configuration at the accident site, a very long lane closure would be required.

The men were not working on the road itself. They were working next to the road and eight to ten inches below the surface of the road. Pursuant to the traffic control plan approved by the State, Granite Construction also erected signs warning traffic of construction activity and placed highly visible barrels along the edge of the road to warn cars away from the drop off. Accordingly, these barrels further distanced the traffic from the men working adjacent to the road.

Mendoza introduced evidence that various persons had the authority to close the lane and had done so in the past. Further, Mendoza's experts testified that although the supervisor anticipated that the men would move away from the road, Granite Construction should have foreseen the events that occurred. In other words, Mendoza asserts that Granite Construction should have foreseen that the pipe would roll forward, that Mr. Mendoza would ignore the safety rules and place his back to the traffic, that he would place himself in front of the pipe, and that Mr. Mendoza would get pushed on to the road just at the

moment that a speeding pickup truck was passing.

Arguably closing the adjacent lane of traffic may have prevented the accident, but at the same time closing the lane would have exposed other persons to traffic for twenty to thirty minutes. The evidence showed that Granite Construction's supervisor did not anticipate that any of the workmen would be on the road. The supervisor stated that he thought the job would take five to ten minutes to complete and that it would take the men away from the road. Under these facts, the failure to close the lane does not show such an entire want of care by Granite Construction as to show conscious indifference of Mr. Mendoza's rights, welfare, and safety.

5. *Failure to Provide the Employees with Safe Equipment.*

The evidence showed that the engine on the front loader stalled causing the loader to jerk forward toward the road. This caused the pipe to start rolling off the bucket. In response to the pipe's motion, Mr. Mendoza moved between the pipe and the road placing his back to the traffic. The movement of the pipe pushed him backwards, causing him to stumble into the road. Although the loader's stalling caused the pipe to move, it was Mr. Mendoza's own actions, in direct contradiction to company rules, that placed him in peril. Childress, without supervision, in the identical situation followed the safety rules and avoided injury. Although Mendoza introduced evidence that this was an older loader that occasionally stalled, Mendoza introduced no evidence of mechanical failure or faulty brakes. These facts do not provide sufficient evidence of an entire want of care as to show conscious indifference by Granite Construction of Mr. Mendoza's right, welfare, or safety.

CONCLUSION

Since the jury had to find that Granite Construction was consciously indifferent to Mr. Mendoza's rights, welfare, or safety, the jury's finding to the contrary is against the great weight and preponderance of the evidence and is manifestly unjust. I would sustain Granite Construction's first point of error that the evidence was factually insufficient to support the jury finding that Granite Construction was grossly negligent.

I would reverse the trial court's judgment.